

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 19 2015
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on Feb. 19, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Welfare of A.W. and M.W. | ) ) ) |
| State of Washington, Department of Social and Health Services, | ) ) No. 90393-0 |
| Respondent, | ) ) |
| v. | ) En Banc ) |
| T.P., | ) ) |
| Appellant. | ) Filed    FEB 19 2015 ) |

FAIRHURST, J.—In 2010, the legislature enacted a new guardianship statute, chapter 13.36 RCW (new statute), to create permanency for children in foster care through the dismissal of dependency and the appointment of a guardian. RCW 13.36.010. This case involves whether the preponderance of the evidence standard of proof satisfies due process and whether the record supports the trial court's decision to appoint guardians. We answer both questions yes and affirm.

## FACTS AND PROCEDURAL HISTORY

The Department of Social and Health Services (DSHS) petitioned for an order appointing a guardian for A.W. and M.W. pursuant to the new statute, and the children's mother, T.P.,[1] contested guardianship.

In 2009, both A.W. and M.W. came to the attention of DSHS after an investigation showed that T.P.'s then 13 year old son, W.W., had sexually abused M.W. and A.W. as well as a third sibling.[2] The abuse occurred while all three children were in T.P.'s care. DSHS obtained a court order removing A.W., M.W., and the third sibling from T.P.'s home on September 17, 2009.

On September 21, 2009, DSHS filed a dependency petition on behalf of A.W. and M.W based on former RCW 13.34.030(5)(c) (2003), which states that the child "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." In December 2009, T.P. agreed to the dependency.

---

[1] T.P. is the mother of six children. None of T.P.'s children are currently in her care. Two of T.P.'s children are now adults. A.W. was born on December 6, 2002, and M.W. was born on October 21, 2000. The whereabouts of the father is unknown, and he defaulted at the guardianship trial.

[2] DSHS' involvement with M.W. began when he tested positive for methamphetamine at birth. DSHS removed M.W. from his mother's care and established dependency. M.W. was returned to T.P.'s home in October 2001, and the dependency was dismissed in April 2002.

As part of dependency, DSHS identified several of T.P.'s parental deficiencies: inadequate parenting skills, lack of awareness of sexual abuse issues, possible substance abuse issues, and mental health issues. The court entered dispositional orders placing the children in out of home care, and requiring T.P. to engage in services including parenting evaluation, mental health counseling, services through the Sexual Assault Response Center, substance abuse assessment, and random urine analysis (UA). A.W.'s and M.W.'s dependencies were reviewed at the required six month intervals.[3] *See* RCW 13.34.138.

In March 2010, the court approved transitioning the children to T.P.'s home contingent on T.P.'s compliance with court ordered services and a DSHS safety plan that continued until the guardianship. The court ordered services were similar to those required as part of dependency and included a parenting evaluation, mental health counseling, Family Preservation Services (FPS), submitting to random UAs, and obtaining and maintaining a safe place to live. A safety plan outlines the conditions for the children to be returned home and is created once a parent engages in FPS. Dr. Michelle Leifheit provided FPS to T.P., and T.P. agreed to the safety plan developed by Dr. Leifheit and DSHS. A term in the safety plan prohibited T.P.

---

[3]The dependencies were reviewed on March 9, 2010, July 13, 2010, September 27, 2010, January 24, 2011, June 21, 2011, October 11, 2011, April 2, 2012, and October 1, 2012.

from allowing her significant other, S.B., to have unsupervised access to the children because S.B. did not pass DSHS' background check.

In December 2010, the transition to T.P.'s home was terminated because a DSHS social worker making a home visit discovered S.B. alone with the children. Additionally, despite the past abuse inflicted by W.W., T.P. permitted him to have frequent visits with the children.

Dr. Naughne Boyd, a psychologist, performed a psychological evaluation on T.P. in March 2011, diagnosing her with polysubstance dependence, attention deficit hyperactivity disorder, and adjustment disorder with mixed anxiety and depression. Dr. Boyd determined that if T.P. tested positive for methamphetamine again, it would not be in the best interests of the children to return them to T.P.'s custody.

T.P. was charged with possession of methamphetamine in May 2012. According to T.P., her relationship with S.B.[4] along with the passing of her father in September 2012 led to increased stress that created difficulties completing DSHS services and drug treatment.

At the guardianship hearing in March 2013, A.W. was 10 years old and M.W. was 12 years old. T.P. admitted that her parental deficiencies were not adequately

---

[4]T.P.'s relationship with S.B. fell apart after he physically assaulted her, and she obtained a no contact order against him. Despite the no contact order, T.P. had contact with S.B. in November 2012.

4

remedied and that she was not capable of parenting a child. Nonetheless, T.P. asserted that she was improving and the children could be returned to her care in the near future. T.P. stated that she needed more time to adjust to her medication and learn about her mental health issues and that she could do this within the next three months.[5] T.P. also noted that throughout the proceedings there was no doubt that she loved and was bonded with her children and that A.W. and M.W. loved her as well.

The trial court found that based on T.P.'s substance abuse, poor judgment, incarcerations, chaotic lifestyle, failure to remedy parental deficiencies, and the length of time of this case, there was little likelihood that conditions could be remedied such that the children could be returned to T.P. in the near future. The trial court entered findings and conclusions and an order appointing guardians for A.W. and M.W. pursuant to the new statute.

T.P. appealed and argued that (1) establishing a guardianship under the new statute using the preponderance of the evidence standard is unconstitutional because it violates due process and (2) even if preponderance of the evidence is the correct standard, the trial court's factual findings were not supported by substantial

---

[5]Dr. Leifheit testified that T.P. missed several appointments and demonstrated a lack of follow-through during FPS. Dr. Leifheit also testified that T.P. began to stabilize when she was on the proper medication.

evidence. The Court of Appeals certified this case for direct review, and the Supreme Court Commissioner accepted direct review.

## STATUTORY BACKGROUND

In 2010, the Washington State Legislature enacted Substitute House Bill 2680, "GUARDIANSHIP—FOSTER CARE." LAWS OF 2010, ch. 272. This chapter created a new process to establish, modify, and terminate guardianships for dependent children in foster care. H.B. REP. ON S.H.B. 2680, 61st Leg., Reg. Sess. (Wash. 2010) (hereinafter H.B. REP.). The legislature enacted the new statute to "create a separate guardianship chapter to establish permanency for children in foster care through the appointment of a guardian and dismissal of the dependency." RCW 13.36.010.

Under the old guardianship statute, former RCW 13.34.231 (2000), *repealed by* LAWS OF 2010, ch. 272, § 16 (old statute), DSHS had three options for the placement of dependent children: continue dependency, establish a dependency guardianship, or terminate parental rights. When DSHS continues dependency, it provides services to the parent in an attempt to reunify the parent and the child. *See* RCW 13.34.020-.025. A dependency is reviewed every six months to determine if agency involvement is still necessary. RCW 13.34.138. Dependency guardianships established under the old statute were used as a permanency option for children who were in foster care and for whom reunification with parents or adoption was not

promising. H.B. REP. at 1. Under the old statute, a dependency guardianship was established when there was little chance that conditions would be remedied to return the child to the parent in the near future, and when guardianship, rather than termination of parental rights, was in the best interests of the child.

While dependency guardianships were considered a permanency option and the dependency guardian had many of the same rights and responsibilities as the parent, the underlying dependency was not dismissed. *Id.* As such, the court could order continued involvement by DSHS. RCW 13.34.235.[6] In addition, when a dependency guardianship was established, parents maintained several rights. *See* former RCW 13.34.232 (1994). In contrast, termination completely severs the parent and child relationship, as well as DSHS' services and involvement for the parent. A court can order termination if it finds "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f).

The enactment of the new statute removed dependency guardianships as a permanency option for children in foster care.[7] To establish guardianship under the new statute the court must find by a preponderance of the evidence

---

[6]"A dependency guardianship is not subject to the review hearing requirements of RCW 13.34.138 unless ordered by the court under RCW 13.34.232(1)(e)." RCW 13.34.235.
[7]Existing dependency guardianships may continue or may be converted to guardianships under the new statute upon the request of the dependency guardian and DSHS or supervising agency. H.B. REP. at 2; RCW 13.34.237.

(a) . . . that it is in the child's best interests to establish a guardianship, rather than terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent; and

(b) All parties agree to entry of the guardianship order and the proposed guardian is qualified, appropriate, and capable of performing the duties of a guardian under RCW 13.36.050; or

(c)(i) The child has been found to be a dependent under RCW 13.34.030;

(ii) A dispositional order has been entered pursuant to RCW 13.34.130;

(iii) At the time of the hearing on the guardianship petition, the child has or will have been removed from the custody of the parent for at least six consecutive months following a finding of dependency under RCW 13.34.030;

(iv) The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting parental deficiencies within the foreseeable future have been offered or provided;

(v) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(vi) The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to provide care for the child until the child reaches age eighteen.

RCW 13.36.040(2).[8]

---

[8]The old statute, former RCW 13.34.231, provided:

Once a guardianship is established under RCW 13.36.040(2), the guardian maintains physical and legal custody of the child and has several legal rights and duties regarding the child's health, education, and care. *See* RCW 13.36.050(2)(a)-(e). The parent continues to have visitation, inheritance, and the right to consent to adoption. *See* RCW 13.36.050. A guardianship ends once the child becomes 18 years old. *Id.* Guardianship is considered a statutory alternative to the termination of parental rights. *In re Guardianship of D.S.*, 178 Wn. App. 681, 682, 317 P.3d 489 (2013).

The new statute gives DSHS three options to pursue with dependent children: (1) continue the dependency, (2) establish a guardianship pursuant to the new statute, or (3) terminate parental rights. Under the second option, once guardianship is

---

A guardianship shall be established if the court f[ound] by a preponderance of the evidence that:

(1) The child has been found to be a dependent child under 13.34.030;

(2) A dispositional order has been entered pursuant to RCW 13.34.130;

(3) The child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030;

(4) The services order under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

(5) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) A guardianship rather than termination of the parent-child relationship or continuation of efforts to return the child to the custody of the parent, would be in the best interest of the child.

9

established, the underlying dependency is dismissed,[9] the supervising agency is no longer involved, a parent's rights are limited, and permanency for the child rather than reunification is the priority. RCW 13.34.237(3); RCW 13.36.050(5), 010.

## ISSUES

A.    Whether the preponderance of the evidence standard in the new statute satisfies due process?[10]

B.    If so, whether substantial evidence supports the trial court's establishment of a guardianship for A.W. and M.W.?

---

[9]*Compare* RCW 13.34.050(5) (providing that once dependency is dismissed the court shall not order DSHS or supervising agency to provide case management services to the guardian or child), *with* former RCW 13.34.232(4) ("The child shall remain dependent for the duration of the guardianship.").

[10]While this issue was not raised during the guardianship hearing, the general rule that an assignment of error needs to be preserved at the trial court for it to be addressed on appeal includes an exception when the claimed error is a "'manifest error affecting a constitutional right.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)). To raise an error for the first time on appeal under RAP 2.5(a), the appellant must show (1) the error is manifest and (2) the error is truly of constitutional dimension. *Id.* To determine if the error is of constitutional magnitude, we look to see whether, if correct, the claim would implicate a constitutional interest. *Id.* An error is manifest if there is actual prejudice. *Id.* at 99. There is actual prejudice if the asserted error had practical effect on the trial of the case. *Id.* Examples of manifest constitutional errors include failing to define the "beyond a reasonable doubt" standard and shifting the burden of proof to the defendant. *Id.* at 101. Here, T.P. satisfies RAP 2.5(a) because T.P. alleges that the standard of proof used to establish guardianship was unconstitutional. If this standard were used in error, it would have implicated her constitutional right to procedural due process and, like failing to define the "beyond a reasonable doubt" standard, would have affected the result of her guardianship hearing. *Id.* Therefore, we correctly accepted review of this issue.

## ANALYSIS

A.     Establishing a guardianship under the new statute by a preponderance of the evidence satisfies due process

We review constitutional challenges de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004). Statutes are presumed constitutional, and the challenger of a statute must prove beyond a reasonable doubt that the statute is unconstitutional. *Sch. Dist.'s Alliance for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 605, 244 P.3d 1 (2010).[11] The beyond a reasonable doubt standard when used in this context describes, not an evidentiary burden, but rather a requirement that the challenger convince the court that there is no reasonable doubt that the statute violates the constitution. *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998).

Procedural due process imposes limits on governmental decisions that affect an individual's liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Due process is a flexible concept, but at a

---

[11] "This standard, that we will not declare a statute unconstitutional 'unless its conflict with the constitution is plain beyond a reasonable doubt,' stretches all the way back to our holding in *Parrott & Co. v. Benson,* 114 Wash. 117, 122, 194 P. 986 (1921). This standard has appeared throughout our jurisprudence." *Sch. Dist.'s Alliance*, 170 Wn.2d at 605. This burden is imposed on the challenger of the statute because of "'our respect for the legislative branch of government as a co-equal branch of government, which, like the court, is sworn to uphold the constitution.'" *Id.* at 605-06 (quoting *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998)). The standard also stems from the premise that the legislature speaks for the people and we are hesitant to strike a duly enacted statute unless we are fully convinced, after searching legal analysis, that the statute violates the constitution. *Id.* at 606.

minimum it requires the right to notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). The Washington Constitution, article I, section 3, does not afford greater due process protection than the United States Constitution.[12] *See State v. Ortiz*, 119 Wn.2d 294, 304, 831 P.2d 1060 (1992).

Parents have a fundamental liberty interest in the right to the care, custody, and management of their children, and they do not lose this right simply because they have not been model parents. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Dependency of Schermer*, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). A parent's right and desire to "'companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." *Santosky*, 455 U.S. at 758-59 (internal quotation marks omitted) (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)). If the State seeks to interfere with this right, it must provide the parent with fundamentally fair procedures. *Id.* at 754.

"'The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the

---

[12]The Washington and United States Constitutions contain nearly identical due process clauses. Article I, section 3 of the Washington Constitution states, "No person shall be deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

correctness of factual conclusions for a particular type of adjudication.'" *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 7-8, 256 P.3d 339 (2011) (alteration in original) (internal quotation marks omitted) (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). A higher burden of proof has "both practical and symbolic consequences." *Santosky*, 455 U.S. at 764.

We have not previously addressed whether establishing a guardianship under the new statute by a preponderance of the evidence satisfies due process. We have noted that preponderance of the evidence was constitutionally sufficient under the old statute. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 931, 976 P.2d 113 (1999). However, we and the United States Supreme Court have noted that to terminate parental rights requires a greater standard of proof than preponderance of the evidence. *Id.*; *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973); *see also Santosky*, 455 U.S. at 754.[13] In this case, we must determine whether a guardianship established under the new statute requires a heightened standard of proof because its effect is similar to the termination of parental rights or whether the preponderance of the evidence standard is sufficient because the effect of a

---

[13]The United States Supreme Court in *Santosky* noted that a majority of the states at the time used the clear and convincing standard of proof for termination proceedings, and the Court found that such a standard adequately balanced the rights of the natural parents and the state's legitimate concerns. However, the Court stated that the "determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts." *Santosky*, 455 U.S. at 769-70.

13

guardianship under the new statute is the same or similar to guardianships established under the old statute.

T.P. alleges three important differences in the new statute that should afford parents the same constitutional safeguards and due process as in a termination proceeding. First, once guardianship is established, dependency is dismissed. Second, once dependency is dismissed, neither the State nor DSHS has continuing involvement. RCW 13.36.050(5). Third, the new statute creates a presumption in favor of continuing the guardianship and narrows the circumstances on which a parent can petition to terminate a guardianship.

To determine whether the standards for a proceeding are fundamentally fair and satisfy procedural due process requirements, we consider three factors: (1) the private interests at stake, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting the use of the challenged procedure, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Santosky*, 455 U.S. at 754; *see also Hardee*, 172 Wn.2d at 10.

1.    The private interest at stake

The significance of the private interest at stake directly corresponds to the burden the State must meet before it can interfere with such an interest. *Hardee*, 172 Wn.2d at 7. The private interest affected in a guardianship proceeding and a

termination proceeding is the relationship between the parent and the child. *See Santosky*, 455 U.S. at 758-59; *In re Dependency of F.S.*, 81 Wn. App. 264, 268, 913 P.3d 844 (1996).

T.P. argues under the new statute that the parent and child relationship is affected more like a termination and so the burden of proof should be beyond a reasonable doubt. The State argues that the effect of the new statute is not permanent and is more like the old statute and therefore the burden of preponderance of the evidence is sufficient.

In *F.S.*, Division One, reviewing the old statute, found that the potential impact on a parent's right to the care and custody of his or her child is significantly less in a guardianship proceeding than in a termination proceeding. 81 Wn. App. at 269. The court reasoned that guardianship is not permanent and does not completely sever the parent's rights. *Id.* Once guardianship is established, the parent has the right to seek modification of or terminate the guardianship and request return of the child. *Id.* As such, guardianship is an inherently temporary situation. *Id.*

Termination, on the other hand, completely denies the parent a fundamental right by removing physical custody, as well as the right to visit, communicate with, or regain custody of the child. *Santosky*, 455 U.S. at 759. The private interest weighs heavily against the use of the preponderance standard in termination proceedings, and the *Santosky* Court held that New York's use of the preponderance of the

15

evidence standard to terminate parental rights was not fundamentally fair and violated parents' due process rights. *Id.* at 769.

Guardianships under the new statute continue to be an option for dependent children that is short of termination and many parental rights remain unaltered. Like under the old statute, parents continue to possess important rights. *See* RCW 13.36.050. Parents can be granted visitation and maintain the right to consent to adoption and provide financial or medical support. *Id.* A guardianship order remains inherently temporary because parents maintain the ability to have the guardianship order modified or terminated. RCW 13.36.060. In contrast, when a parent's rights are terminated, it results in "all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent" being severed and terminated. RCW 13.34.200(1).

T.P. asserts that the new statute significantly curtails the opportunities available to modify and terminate a guardianship order, which in turn creates a greater impact on the private interest at stake and should result in a higher burden.

While under the new statute, some provisions, such as a guardian's authority to invest and expend funds, benefits, or property belonging to the child, cannot be modified. *See* RCW 13.36.050(1)(c). Other provisions of the guardianship order can still be modified and terminated.

16

Under the new statute, a parent can still have visitation and can modify the visitation granted in the initial guardianship order. RCW 13.36.060. Visitation is an important right that distinguishes a guardianship from termination. *See Santosky*, 455 U.S. at 749. To modify visitation, the party seeking visitation must file an affidavit setting forth facts supporting the motion for modification. RCW 13.36.060(1)(a). The court will deny modification unless it finds adequate cause for a hearing on the motion. RCW 13.36.060(2). If the court finds that adequate cause exists, it will set a date for a hearing on an order to show cause why the modification should not be granted. *Id.*

Under the new statute, termination of the guardianship can still be sought. The court should not terminate a guardianship unless it finds that subsequent to the establishment of the guardianship a substantial change has occurred in the circumstances of the child or the guardian and that termination is necessary to serve the best interests of the child. RCW 13.36.070(2).[14]

---

[14]Alternatively, a guardianship can be terminated if there is an agreement between the guardian, the child, and the parent seeking to regain custody. Such an agreement will terminate guardianship only if the court finds by a preponderance of the evidence that:

> (a) The parent has successfully corrected the parenting deficiencies identified by the court in the dependency action, and the circumstances of the parent have changed to such a degree that returning the child to the custody of the parent no longer creates a risk of harm to the child's health, welfare, and safety;
>
> (b) The child, if age twelve years or older, agrees to termination of the guardianship and the return of custody to the parent; and
>
> (c) Termination of the guardianship and return of custody of the child to the parent is in the child's best interests.

RCW 13.36.070(3).

Under the old statute, courts found that guardianships were temporary and did not irrevocably eliminate parental rights in part because the parent, or any party, could petition the court for termination of the guardianship based on any party's changed circumstances.[15] *In re Dependency of A.V.D.*, 62 Wn. App. 562, 570, 815 P.2d 277 (1991); *K.S.C.*, 137 Wn.2d at 930 n.7. This gave a parent the opportunity to demonstrate that he or she had taken the steps necessary to regain custody. *A.V.D.*, 62 Wn. App. at 570; *K.S.C.*, 137 Wn.2d at 930 n.7. However, providing a parent with an opportunity to regain custody was not the purpose of the old statute, and it is not the intent or purpose of the new statute. *In re Dependency of A.C.*, 123 Wn. App. 244, 251, 98 P.3d 89 (2004); *see* RCW 13.36.010. Guardianships are intended to offer sufficient permanency to be a viable alternative to termination of parental rights. *F.S.*, 81 Wn. App. at 270.

Furthermore, the new statute does provide a way for a parent to seek termination of a guardianship based on a change in his or her circumstances. *See* RCW 13.36.070(3). The parent must show that he or she remedied parental

---

[15]Termination of guardianships under the old statute could be sought by any party, DSHS, or the supervising agency. Former RCW 13.34.233(2) (2000). If the court found a substantial change in circumstances of any party since the establishment of guardianship and that termination would be in the child's best interest, a guardianship was terminated. *Id.*; *In re Dependency of A.V.D.*, 62 Wn. App. 562, 570, 815 P.2d 277 (1991); *F.S.*, 81 Wn. App. at 269; *In re Dependency of A.C.*, 123 Wn. App. 244, 251, 98 P.3d 89 (2004).

deficiencies and that the appointed guardian and the child, if age 12 or older, agree to termination of the guardianship. RCW 13.36.070(3)(a)-(b).

We hold the new statute's impact on the private interest at stake does not merit an increased burden on the State to establish a guardianship.

2.     Risk of error created by the State's chosen procedure

"The relevant question is whether a preponderance [of the evidence] standard fairly allocates the risk of an erroneous factfinding between [the] two parties."[16] *Santosky*, 455 U.S. at 761.

In *F.S.*, the court found that the risk of error is not as great in guardianship proceedings as in termination proceedings. 81 Wn. App. at 270. The court reasoned that there is less risk associated with erroneous deprivation because guardianships are a temporary intrusion into the parent and child relationship and are reviewable, modifiable, and terminable. *Id.*

In *Santosky*, the Court noted that erroneous termination unnecessarily destroys the natural family and the parent and the child share an interest in avoiding such a result. 455 U.S. at 765. The Court also found that there is a significant risk of error in termination proceedings because the "State's ability to assemble its case

---

[16]The two parties in a guardianship proceeding, like a termination proceeding, are the State and the parent. *Santosky*, 455 U.S. at 761. The State must assume that the interests of the parent and the child converge until the State proves by the requisite standard that there is parental unfitness. *Id.*

almost inevitably dwarfs the parent's ability to mount a defense." *Id.* at 763. In termination proceedings, judicial discretion and the difference in the adversarial resources coupled with the preponderance of the evidence standard create a significant risk of erroneous deprivation. *Id.* at 764.

T.P. argues that guardianships under the new statute create a greater risk of erroneous deprivation than guardianships under the old statute because guardianships are now more difficult to modify or terminate. Therefore, according to T.P., guardianships now have a more permanent effect on the parent and child relationship. In addition, T.P. asserts that the dismissal of dependency eliminates the opportunity for continued monitoring and State services.

Increasing the burden of proof will not curtail the establishment of erroneous guardianships. The changes noted by T.P. do not alter the nature of a guardianship such that it increases the risk of an erroneous deprivation. When a guardianship is established under the new statute, parental rights are not completely severed and the guardianship order can be modified or terminated.

The new statute, like the old statute, provides significant procedural safeguards for parents to ensure that the hearing is fair and accurate. Parents are entitled to notice, to counsel, to the State's records, and to present and cross-examine witnesses. RCW 13.36.040(1); RCW 13.34.090(1). Cases are heard by an unbiased fact finder. RCW 13.34.090(1). To establish a guardianship under the new statute,

there must be a judicial fact-finding that the child is a dependent and that a dispositional order was entered. RCW 13.36.040(2)(c)(i)-(ii). The hearing for the dispositional order also affords parents significant procedural protections. *See* RCW 13.34.090, .130. A guardianship is established only if the child has been out of the house for six months and the guardianship is judicially determined to be in the child's best interest. *See* RCW 13.36.040(2). Moreover, the dismissal of dependency reduces the risk of error for a parent at future hearings because DSHS is no longer a party that can contest motions for visitation or petitions to terminate the guardianship. *See Santosky*, 455 U.S. at 763 (noting that the State has a superior ability to prepare its case).

Because parents are provided significant procedural safeguards and a guardianship order is terminable and modifiable, the preponderance of the evidence standard fairly allocates the risk of an erroneous fact-finding between the State and the parent.

3.    Countervailing State interest

The State's primary interest is providing for the health and safety of children. *See Hardee*, 172 Wn.2d at 12 ("The State holds the highest interest in the protection of children.").

When considering whether to pursue a guardianship or terminate parental rights, the State must balance various and conflicting interests. The State interest

under the new and old statutes is providing permanence for the child without terminating parental rights. *F.S.*, 81 Wn. App. at 270. Additionally, the State has an interest in conserving resources by not continuing dependency when guardianship is in the best interest of the child and the parent has failed to improve despite access to services. In termination proceedings, the State has an interest in "preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Santosky*, 455 U.S. at 766.

The old statute facilitated visitation between parent and child, as well as continued involvement by state agencies, and this required a measure of flexibility. *F.S.*, 81 Wn. App. at 270. Flexibility was provided by a lower standard of proof to establish a guardianship. *Id.* Because dependency ends under the new statute, the State is no longer involved after the establishment of guardianship. T.P. asserts that the lack of DSHS' involvement under the new statute diminishes the countervailing State interest because DSHS is not involved to supervise or provide case management services to the guardian or child. RCW 13.36.050(5).

Nonetheless, like the old statute, guardianships under the new statute present a middle ground between dependency and termination. The preponderance of the evidence standard provides a measure of flexibility for DSHS to balance the various and conflicting interests involved in the establishment of a guardianship. *See F.S.*,

81 Wn. App. at 270. The State's interest in the health and welfare of children weighs toward using the preponderance of the evidence standard.

The new statute is presumed constitutional, and after applying the fundamental fairness factors, T.P. has not presented sufficient evidence to demonstrate that the preponderance of the evidence standard violates her right to due process. The differences in the new statute do not increase the invasion to the private interest or the risk of error. The new statute is not akin to termination because parents retain important rights, like visitation and the ability to modify or terminate the guardianship. Guardianships under the new statute are more akin to guardianships under the old statute and do not require a higher burden of proof than preponderance of the evidence.[17] We hold that the preponderance of the evidence standard promulgated by the legislature satisfies due process.

B.      Substantial evidence supports the trial court's findings and the appointment of a guardian for A.W. and M.W.

We review challenges to factual findings for substantial evidence. *K.S.C.*, 137 Wn.2d at 925. Substantial evidence exists so long as a rational trier of fact could find

---

[17]In a recent case, Division Two stated that in applying the new guardianship statute the courts should look to termination cases for guidance. *In re Guardianship of K.B.F.*, 175 Wn. App. 140, 146 n.10, 304 P.3d 909 (2013). Yet, in this same footnote, the court noted that a preponderance of the evidence standard should be applied. *Id.* In another recent case, Division Two noted that the constitutional differences at stake in terminations require parents to receive greater due process protections than when guardianship is established under the new statute. *In re Welfare of R.H.*, 176 Wn. App. 419, 425, 309 P.3d 620 (2013).

the necessary facts were shown by a preponderance of the evidence. *Id.* Unchallenged findings of fact are verities on appeal. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

We give deference to the trial judge's advantage in having the witnesses before him or her, which is particularly important in proceedings affecting the parent and child relationship. *K.C.S.*, 137 Wn.2d at 925; *see In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). The reviewing court should not decide the credibility of witnesses or weigh the evidence. *A.V.D.*, 62 Wn. App. at 568. We will uphold the trial court's finding that guardianship is in the child's best interest so long as such a finding is supported by substantial evidence. *K.S.C.*, 137 Wn.2d at 925.

To establish a guardianship under the new statute, the court must find by a preponderance of the evidence that guardianship is in the child's best interest rather than termination or continued efforts to reunify with the parent through dependency. RCW 13.36.040(1). In addition, the court must find that the requirements described in RCW 13.36.040(2)(c)(i)-(vi) are satisfied.

1. Substantial evidence supports the trial court's finding that guardianship was in the best interests of A.W. and M.W.

Courts look to several factors to determine the best interest of the child. *A.C.*, 123 Wn. App. at 254. There is not an exclusive list of factors to consider but instead the court must decide each case on its own facts and circumstances. *Aschauer*, 93

24

Wn.2d at 695. In *A.C.*, Division One listed some factors to consider when making the best interest determination: the strength and nature of the parent and child bond, the benefit of continued contact with the parent or the extended family, the need for continued State involvement and services, and the likelihood that the child may be adopted if parental rights are terminated. 123 Wn. App. at 255. Where the parent's interests conflict with the child's rights to basic nurturing, physical health, and safety, the rights of the child prevail. *Sego*, 82 Wn.2d at 738. Based on the testimony and exhibits presented at trial, the trial court found this factor was met.

A.W. and M.W. have been dependents since December 2009[18] and have remained out of the home by court order since 2010. The DSHS social worker testified that guardianship would be in the children's best interests and that the mother failed for over three years to demonstrate that she could safely parent and provide the children with needed stability. In addition, Dr. Boyd expressed apprehension about placing the children with T.P. Dr. Boyd testified that T.P.'s failure to consistently attend drug and alcohol treatment demonstrated a lack of commitment to her sobriety and effective parenting. T.P. admitted to being primarily out of compliance with her drug and alcohol treatment for the last year.

---

[18]M.W. was also a dependent from October 2000 to April 2002.

T.P. argues that there is undisputed evidence that she and her children are bonded and that she loves her children dearly. She also asserts that the trial court based its conclusion on antiquated facts instead of those existing at the time of the guardianship trial.[19]

T.P. also contends that DSHS did not present evidence as to why it would be in the children's best interests to enter guardianship with their current placement. The trial court is not required to determine that the specific guardianship placement would be in a child's best interest. RCW 13.36.040(2). Instead, the statute requires a finding that a guardianship is in the child's best interest rather than adoption or continued reunification efforts with the parent. *See id.* Even so, the trial court found that the appointed guardians were qualified, appropriate, and capable of being A.W. and M.W.'s guardians. T.P. did not contest this finding. The proposed guardians signed a statement acknowledging their willingness to care for the children.

We hold substantial evidence supports the trial court's finding that guardianship was in the best interest of A.W. and M.W.

---

[19]According to T.P., at the time of trial she was in the process of turning her life around, was in compliance with drug treatment, and was making strides with her mental illness treatment. T.P. relied on Dr. Leifheit's testimony that she no longer needed crisis management and T.P. was back on track.

2.  Substantial evidence supports the trial court's finding that there is little likelihood that conditions will be remedied so that the children can be returned to the parent in the near future

RCW 13.36.040(2)(c)(v) requires the State to prove that there is little likelihood that the conditions will be remedied so that the children can be returned to the parent in the near future.[20] Based on the testimony and exhibits presented at trial, the trial court found this factor was met.

T.P. challenges this finding by arguing that she was in the process of turning her life around and DSHS should have continued to pursue reunification efforts. She specifically challenges the finding that she failed to maintain sobriety since 2009 and that her lifestyle was chaotic causing her to miss appointments for herself and her children.

The dependency reviews demonstrated that T.P. was offered and provided with several services including substance abuse prevention, counseling services, and parenting awareness classes. Even though T.P. knew that she could initiate the offered services by contacting her social worker, and despite taking part in some

---

[20]Courts interpreting this factor under the old statute found that the focus of this factor is whether parental deficiencies have been corrected. *In re Dependency of T.R.*, 108 Wn. App. 149, 165, 29 P.3d 1275 (2001).

services, she was unable to improve.[21] In May 2012, T.P. tested positive for methamphetamine.

Although T.P. had a no contact order against S.B. because of domestic violence, she had contact with S.B. the month of trial. Leaving the children with S.B., which was a violation of the safety plan, had ended the children's transition back to T.P. during the dependency. T.P. also admitted that she was not ready to be a parent. We hold substantial evidence supports the trial court's decision that there was little likelihood T.P. would remedy conditions so the children can be returned to T.P. in the near future.

Substantial evidence in the record supports the trial court's determination that guardianship was in the best interest of the children and that the elements of guardianship were satisfied. *See* RCW 13.36.040(2)(c)(i)-(vi).

## CONCLUSION

We hold that establishing a guardianship by a preponderance of the evidence under the new statute satisfies due process. Considering the impact a guardianship has on the parent and child relationship, the use of the preponderance of the evidence standard places a sufficient burden on the State. Under the new statute, parents retain

---

[21]T.P. was arrested on several occasions throughout dependency. When A.W. and M.W. lived with T.P. during dependency, her arrests caused A.W. and M.W. to stay with her sister, and when they did not live with T.P., her arrests caused her to miss visits with them.

substantial rights regarding the care and custody of their children once guardianship is established. Since guardianships under the new statute do not rise to the level of terminations, proceedings to establish guardianships do not warrant the same standard of proof as termination proceedings.

In addition, we affirm the trial court's establishment of guardianship for A.W. and M.W. Substantial evidence supports the trial court's findings that guardianship was in the children's best interests and that T.P. would not be able to resume parenting within the near future.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

Owens, J.

Gordon McCloud, J.

Stephens, J.

Yu, J.