
FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 NOV 13 AM 11: 33

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of | No. 77962-1-I |
| H.K.F. (DOB: 09/01/2015) | |
| Minor child. | |
| MARIAH HERD, | DIVISION ONE |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondent. | FILED: November 13, 2018 |

MANN, A.C.J. — Mariah Herd appeals the trial court's order terminating her parental rights to her daughter, H.K.F. She contends that the State failed to prove that all necessary and available services capable of correcting her parental deficiencies were offered or provided to her. She also challenges the trial court's findings regarding current parental unfitness and the best interests of the child. Because substantial evidence supports the trial court's findings, we affirm the termination order.

## FACTS

On June 3, 2014, Herd's first child, J.F., was born. Both Herd and J.F. tested positive for heroin and methamphetamines at the hospital, and J.F. was immediately removed from Herd's care.

Herd did not attend either the shelter care hearing or the trial on the dependency petition, and an order of dependency was entered by default. The order of dependency required Herd to participate in a drug and alcohol evaluation, random urinalysis testing, mental health counseling, a neuropsychological evaluation, and parenting classes. Herd was also required to participate in Safe Babies, Safe Moms, an intensive case management and referral program for mothers of young children.

Herd did not comply with any of these services. Department of Social and Health Services[1] social worker Ian Krauter attempted multiple times to engage Herd in the dependency proceedings. Herd did not return any of Krauter's phone calls or respond to any of his letters. On one occasion, Krauter went to Herd's house, but when he identified himself, Herd refused to open the door. On another occasion, when Krauter and the guardian ad litem visited the house, "the blinds moved and noises could be heard as if someone was home, but no one answered the door." The paternal grandmother later told Krauter that Herd and J.F.'s father

---

[1] The entity responsible for child welfare services was subsequently renamed the Department of Children, Youth, and Families. See RCW 43.216.906.

-2-

were in the bedroom laughing. Herd subsequently moved and changed her phone number and did not inform Krauter.

On May 20, 2015, the Department filed a termination petition as to J.F. Herd relinquished her parental rights to J.F. and he was adopted by a paternal aunt.

On September 1, 2015, Herd gave birth to H.K.F. Herd admitted to using heroin until approximately August 18, 2015, when she entered an inpatient substance abuse treatment program for pregnant women at Swedish Hospital. H.K.F. was removed from Herd's care at the hospital.

As with J.F., Herd did not appear for the trial on the dependency petition for H.K.F. and an order of dependency was entered by default. The dependency order required Herd to participate in a drug and alcohol evaluation, random urinalysis testing, parenting classes, and the Safe Babies, Safe Moms program.

Krauter sent Herd letters on February 19, 2016, and June 28, 2016, explaining how she could access the court-ordered services. Krauter also attempted to schedule appointments with Herd to discuss her services but Herd did not attend any of the meetings. On August 17, 2016, the Department filed a petition to terminate Herd's parental rights to H.K.F.

On April 11, 2017, while the termination trial was pending, Herd entered a 90-day inpatient treatment program at Casa Capri Recovery, a dual-diagnosis program in California for chemical dependency and mental health treatment. On May 24, 2017, Herd was referred to Elevation Behavioral Health, another dual-

-3-

diagnosis program in California for "more specific mental health treatment." Dr. Marisa Sisk, Elevation's clinical director, testified that residents at Elevation are offered two individual therapy sessions and two group therapy sessions each day, as well as two neurofeedback sessions each week. Dr. Sisk diagnosed Herd with severe opiate use disorder, severe methamphetamine dependence, major depressive disorder, and generalized anxiety disorder. Dr. Sisk testified Herd "had a significant mental health component to her drug dependency," and recommended that Herd engage in intensive outpatient mental health treatment.

Herd requested to return to Washington in order to be closer to H.K.F. Dr. Sisk made "pretty intensive efforts . . . to locate a program that fit all of [Herd's] needs" in Washington. Dr. Sisk also considered Herd's "desire not to return to the Snohomish County area where she had previously resided as it may trigger or tempt her to use again."

On June 26, 2017, Herd was discharged from Elevation to Gates of Grace Sober Living Home in Vancouver. Dr. Sisk testified that Gates of Grace was "an intensive outpatient program for dual-diagnosis concerns to continue to address chemical dependency and mental health."

Herd left Gates of Grace after approximately two weeks. Herd testified that it was too difficult to attend visits with H.K.F., who was placed in foster care in Everett, even though Krauter offered to get Herd Greyhound bus tickets and "a hotel room for the weekend" to facilitate visitation.

On July 20, 2017, Herd entered Evergreen Recovery Centers, a 90-day transitional housing program offering intensive outpatient substance abuse treatment. Evergreen staff testified that on-site mental health counseling was offered at least once a week and that Herd's case manager was available to transport Herd to any mental health appointments she had in the community. Herd also began participating in the Safe Babies, Safe Moms program.

On August 21, 2017, Herd moved to continue the termination trial, citing her active participation in services. The trial court continued the trial date for six months, to March 12, 2018.

Immediately after the hearing, Herd stopped attending all services and did not respond to any of the attempts by Evergreen or Safe Babies, Safe Moms to contact her. The guardian ad litem requested the trial court reconsider its decision to continue the trial. The trial court did so, and trial on the termination petition began on November 13, 2017. At the time of the trial, H.K.F. was two years old and had never resided with Herd. After hearing testimony from 12 witnesses and reviewing 57 exhibits, the trial court entered findings of fact and conclusions of law and an order terminating Herd's parental rights. Heard appeals.

## ANALYSIS

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To terminate the parent-child relationship, the Department

must prove each of the following six statutory elements by clear, cogent, and convincing evidence.

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future ...[; and]

(f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). In addition, due process requires the trial court to expressly or impliedly find by clear, cogent, and convincing evidence that the parent is currently unfit. In re Welfare of A.B., 168 Wn.2d 908, 918-19, 232 P.3d 1104 (2010). If all of these elements are proven, the trial court must also find by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(1).

We treat unchallenged findings of fact as verities. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). Challenged findings will be upheld "[i]f there is substantial evidence which the lower court could reasonably have found to be clear, cogent, and convincing." In re Welfare of Aschauer, 93 Wn.2d 689, 695,

611 P.2d 1245 (1980). Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown to be "highly probable." In re Dependency of T.L.G., 126 Wn. App. 181, 197, 108 P.3d 156 (2005).

Herd contends that the trial court erred in finding that all necessary services were offered or provided because the Department did not ensure she was able to receive mental health services. But Herd does not challenge the trial court's finding that she was consistently offered or provided mental health services throughout the dependency proceedings for both J.F. and H.K.F.:

> 2.28 Several attempts were made to engage the mother in mental health services over the years, but the mother would repeatedly stop going before she received a benefit, or would not go at all. Mental health services were available through several sources once the mother returned to Everett in July 2017. They were available through Safe Babies, Safe Moms, Evergreen Recovery Services, and also through Compass Health, Sea Mar, and other community providers.

We treat this unchallenged finding as a verity on appeal.

Nevertheless, Herd argues that the State failed to meet its burden because she was not offered or provided mental health services after she returned to Everett. We disagree.

First, Herd continued to participate in the Safe Babies, Safe Moms program. Christy Richardson, the program supervisor, testified that Safe Babies, Safe Moms offered in-house counseling, including dialectical behavioral therapy, moral reconation therapy (MRT) for trauma victims, and three types of parenting classes. She also testified that case managers can make referrals for additional mental health counseling if necessary. Herd testified that she actually had more access to

-7-

mental health services through Safe Babies, Safe Moms than she did at

Elevations:

> [STATE]: And how does that amount of counseling, I guess I'm going to call it, compare to the amount of counseling that you were getting at the Elevations facility?
>
> [HERD]: I think it was about the same. Maybe a little more, yeah.
>
> [STATE]: Which was a little more?
>
> [HERD]: At Safe Babies, Safe Moms.

In addition, on-site mental health counseling and transportation to community

mental health resources was offered when Herd resided at Evergreen.[2]

Herd contends that the Department failed to "expressly and

understandably" provide mental health services because Krauter "did not tell her it

was required for her to gain custody of her daughter."[3] But Herd was ordered to

participate in mental health counseling after the shelter care hearing for H.K.F. and

the termination petitions for both J.F. and H.K.F. alleged that one of Herd's

parental deficiencies was "mental health issues." This demonstrates that Herd had

---

[2] To the extent that Herd argues the Department was responsible for offering or providing the service to her, the law is clear that the trial court may consider all services that have been provided to a parent, regardless of the source. In re Dependency of D.A., 124 Wn. App. 644, 652, 102 P.3d 847 (2004). Krauter had previously provided Herd referrals to several community mental health providers, including Compass Health, Catholic Community Services, SeaMar, and Center for Human Services.

[3] Citing In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983), Herd argues that "[a] meaningful offer of services must include more than simply a suggestion that the service would be a good idea." But in Hall, the Department failed to offer or provide parenting skills training to a parent and merely suggested that he "take courses or read books on parenting." Hall, 99 Wn.2d at 850. This was not the case here, where Herd was repeatedly and affirmatively offered mental health services.

notice that mental health services were critical for reunification. Furthermore, the record shows that Krauter unambiguously offered mental health services to Herd at meetings in July 2016, November 2016, and February 2017, and even offered to have an intern drive Herd to her first appointment. Substantial evidence in the record supports the trial court's finding that mental health services were "expressly and understandably" offered or provided to Herd.

Herd additionally claims that the Department failed to prove by clear, cogent, and convincing evidence that she was currently unfit. She argues that the Department failed to demonstrate that she was using drugs at the time of the termination trial. In the alternative, she argues, the State failed to link her drug use to an inability to safely care for H.K.F.

But the State proved by clear, cogent, and convincing evidence the six elements of RCW 13.34.180(1). "Satisfying all six of the statutory elements raises an implied finding of parental unfitness." In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016). Moreover, substantial evidence supported the trial court's finding of current parental unfitness. The day that Herd successfully obtained a six-month continuance of the termination trial, she abruptly quit participating in services, stopped visiting with H.K.F., and did not respond to any attempts to contact her. She admitted that she was living with J.F. and H.K.F.'s father, who was actively using heroin. Krauter, who had been Herd's social worker for more than three years, testified that Herd's behavior at the time of the trial was consistent with a relapse:

[STATE]: Was there a difference in your presentation with her versus when she was using versus when she was not using?

[KRAUTER]: Yes.

[STATE]: What were the differences?

[KRAUTER]: When she was not using, she would – when she could, she'd call me almost on a weekly basis. I didn't document each conversation because sometimes it was just a really quick hello, how are things going? Just a quick update. I'm still in treatment. This is what I'm doing. She would also call me up to make sure if I said I was going to do something that I actually did it. She'd actually meet with me. She would engage with me. Whereas when she was using, often I would have to go track her down. I would not have contact with her. She would not be understanding what was going on.
...

[STATE]: Do you have concerns that the mother has relapsed?

[KRAUTER]: Yes.

[STATE]: And what is that based on?

[KRAUTER]: It has been the pattern that when she disappears, that she has – that she was using. Also, I mean, I didn't know this at the time, but now I do know that the father also relapsed around the same time as the mom. They testified that they were living together. It is very rare that somebody -- when two people live together and they have a history of drug use, it's very rare that they're not using.
...

[HERD'S ATTORNEY]: But it's also possible that she remains clean and sober to this day as she believes – or as she has testified that she is?

[KRAUTER]: It is possible. However, over the history of the cases she has relapsed each time she has aborted treatment.

Although Herd testified that she was clean and sober at the time of trial, the trial court expressly found her explanations for leaving her services and sober housing

program not credible. We defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

Finally, Herd challenges the trial court's finding that termination was in H.K.F.'s best interests. Herd argues that the trial court erred in making this finding because the State failed to prove the six statutory elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence. Because we conclude that the State met its burden under RCW 13.34.180(1), the trial court did not err in proceeding to find that termination was in H.K.F.'s best interests.

We affirm the trial court's order terminating Herd's parental rights to H.K.F.

_Maun, A.C.J._

WE CONCUR: