IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Guardianship of: | ) | No. 30981-9-III |
| | ) | |
| | ) | |
| D.S. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

KULIK, J. — Guardianship is a statutory alternative to termination of parental rights. Guardianship is designed to establish permanency for children in foster care through the appointment of a guardian and dismissal of the dependency. RCW 13.36.010. The Department of Family and Child Services (Department) filed a petition to appoint a guardian for D.S. Prior to the petition, the Department's permanency plan for D.S. was reunification with his father, H.S. However, once H.S. was deported to Mexico, the Department's plan changed to guardianship. H.S., who remains in Mexico, contested the petition. Ultimately, the trial court ordered guardianship on the basis that it was in the best interests of D.S. because conditions could not be remedied so that D.S. could be returned to H.S. in the near future. H.S. appeals. He contends that the best interests of the child standard is unconstitutionally vague. He also contends that substantial evidence

does not support the finding that "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the parent[]in the near future," as required by RCW 13.36.040(2)(c)(v), because he no longer has parental conditions to be remedied that would prohibit D.S. from being returned to his care.

We conclude that because the father has remedied his parental deficiencies, D.S. can be returned to his father's care in the near future. Accordingly, we vacate the guardianship and remand for reinstatement of the dependency.

## FACTS

C.B. gave birth to a son, D.S., in September 2005. D.S.'s father, H.S., was present at the birth, but was deported to Mexico one year later. D.S. lived with his mother until April 2009. At that time, the Department removed D.S. from her care. H.S. was given custody of D.S. in June 2009.

H.S.'s custody lasted about one year. In June 2010, H.S. was hospitalized for drug-related hallucinations. The Department removed D.S. from his care. H.S. agreed to a dependency order, engaged in voluntary services, and visited D.S. regularly. In the meantime, the Department placed D.S. with C.B.'s father, Randall Batchelor, and stepmother, Karen Batchelor. D.S. was just under five years old when the Department found him dependent as to both parents on August 12, 2010.

2

The Department planned to reunify H.S. and D.S. in the early fall of 2010. However, H.S. was arrested for a driving while under the influence in October 2010 and deported. The Batchelors began proceedings to obtain third party nonparental custody of D.S. The Department supported the Batchelors' efforts, but did not consider terminating H.S.'s parental rights because of D.S.'s continued relationship with H.S.

H.S. returned to the United States in February 2011. He wished to resume visits with D.S. and continue with services. He completed drug treatment and gave clean random urinalysis (UA) samples. H.S. never tested positive for drugs and never missed an appointment. H.S. visited D.S. regularly, with approximately three supervised visits per week. After six months of good progress, social worker John Plotz recommended reunification. At a review hearing, the court found that "[p]arental deficiencies of father have been eliminated and the legal presumption is that the child should be returned to the father." Ex. 6. In September, the Department changed D.S.'s permanency plan from third party custody to reunification with H.S.

However, in late October, H.S. was detained by Homeland Security during a visit with D.S. H.S. was deported again. H.S. could not lawfully return to the United States for 20 years. He decided to make a home in Mexico rather than return to the United States. Since the deportation, H.S. has remained in contact with his social worker at the

Department, speaking to him about every two weeks. H.S. also has continued to contact D.S. by telephone approximately twice per week.

In February 2012, the Department filed a petition to appoint the Batchelors guardians of D.S. The guardian ad litem's report supported the guardianship, stating that D.S. had been dependent for too long, and H.S. was unable to parent because he lived in Mexico and had no plans to return to the United States.

A guardianship hearing was held on May 30, 2012. H.S. appeared by telephone and with the help of an interpreter. H.S. testified that he wanted to provide D.S. "all my love and a good life" in Mexico. Report of Proceedings (RP) at 194. He said that the home he shared with his mother, sister, and adult son was ready for D.S.'s arrival. H.S. intended to enroll D.S. in school, sports, and counseling. He had also arranged for his sister to provide childcare while he worked on the family farm. Additionally, H.S. had been seeing a chemical dependency counselor and presented evidence of clean UAs.

Mr. Plotz and D.S.'s mental health counselor, William Layman, also testified. Mr. Layman explained that it was important for children to have a stable and consistent environment. Mr. Plotz added that children whose attachments to adults are disrupted can become withdrawn, angry, fearful, and developmentally stunted. He further explained that those children often become dysfunctional adults.

4

Both men agreed that D.S. was doing well in the Batchelors' home. Mr. Layman believed that D.S. had a stable environment and was thriving there. Mr. Layman also observed that D.S. was reluctant to leave the Batchelors although he was attached to H.S. Additionally, Mr. Layman noted that D.S. expressed sadness and grief when his father was deported. Mr. Plotz said that D.S.'s resiliency was a testament to the stable environment that the Batchelors had provided.

Mr. Plotz and Mr. Layman also testified about how D.S. should be transitioned to his father's care. Mr. Layman explained that a gradual process would be needed. He said that D.S. should be introduced to his family in Mexico using Skype and social media. He also recommended that D.S. be given a couple of months to say goodbye to his family and life in the United States. Mr. Plotz explained that supervised visits in Mexico would be necessary.

They also testified about whether such a transition could occur within D.S.'s "near future." When asked what D.S.'s near future was, Mr. Layman explained, "if something was happening soon he would have a concept of what next week would be like, next month would be like, or two months, or before the next school year. I think beyond that it gets a little vague for a child's sense of time." RP at 27. Mr. Plotz testified that the process would take longer than two months and longer than D.S.'s near future.

5

Both men opined that it was in D.S.'s best interests to remain with the Batchelors and that transitioning to H.S.'s care would be "traumatic." RP at 21, 171. Mr. Layman indicated that it was possible for D.S. to do well in Mexico, but it was also possible for him to do poorly. He indicated that, because D.S. was doing well with the Batchelors, placing him with H.S. was not worth the risk. Mr. Plotz recommended the guardianship because it "is a permanent plan for [D.S.], while still recognizing the relationship with [H.S]." RP at 156.

DIF, Mexico's equivalent to the Department, performed a study of the home where D.S. would live with his father. This study found that the home provided good hygiene, adequate bathrooms, and that other family members lived there. DIF found no "red flags." RP at 37. Mr. Plotz testified that the Department received a positive home study from DIF. However, he also testified that the home study was inadequate because it did not specify what resources were available in the community. Mr. Plotz wanted the Department to have supervision of D.S. in Mexico.

As for H.S., Mr. Plotz testified that H.S. completed all services necessary to correct his parenting deficiencies. At the time of trial, H.S. had been clean for almost two years. H.S. continued submitting clean UAs after deportation, including the random testing by DIF. Despite this clean record and graduation from substance abuse treatment,

6

Mr. Plotz testified that he was still concerned about H.S.'s ability to stay sober because there was always a risk for relapse. Ultimately, Mr. Plotz stated that the only thing that changed regarding H.S. is that he was unavailable to parent because he is no longer in Washington.

The court ultimately granted the guardianship petition. It explained that it was "more likely to produce a positive outcome for the child" and "better than terminating parental rights . . . because the child's relationship with his father is of benefit to the child and should be maintained." Clerk's Papers (CP) at 17. The court gave the most weight to the testimony of Mr. Layman and Mr. Plotz. The court noted that stability was extremely important for D.S.'s development and that the Batchelors have provided him with a stable home since July 2010. It also noted that D.S. had thrived in the Batchelors' care and had bonded to their family.

The court also explained that denying the petition was risky. On one hand, it was possible that transitioning to H.S.'s care would be successful. The court acknowledged that D.S. was bonded to H.S., H.S. spoke regularly and lovingly to D.S. over the telephone, H.S.'s home was suitable, H.S. was clean and sober, and H.S. had employment. But on the other hand, D.S.'s ability to form attachments to a new family and adjust to a new language and environment was unknown. Moreover, H.S. had not

7

been consistent in the past, left an older son in Mexico to work in the United States, and H.S. had been deported so many times that he might go to prison if deported again. The court further found that the near future for D.S. was two to three months and D.S. could not be transitioned to H.S. within that time frame.

H.S. appeals the trial court's order granting guardianship. H.S. contends that the "child's best interests" standard in RCW 13.36.040(2)(a) is unconstitutional under the void-for-vagueness doctrine. He also contends that the trial court erred by finding that there was little likelihood that conditions will be remedied so that D.S. can return to H.S. in the near future, as contained in RCW 13.36.040(2)(c)(v).

## ANALYSIS

In 2010, the legislature created a separate guardianship statute as an alternative route to permanency for dependent children. LAWS OF 2010, ch. 272, § 1. Chapter 13.34 RCW established permanency through the appointment of a guardian and dismissal of the dependency. RCW 13.36.010. Under RCW 13.36.040(2), a guardianship shall be established if:

> (a) *The court finds by a preponderance of the evidence that it is in the child's best interests to establish a guardianship,* rather than to terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent; and
>
> . . . .

8

(c)(i) The child has been found to be a dependent child under RCW 13.34.030;

(ii) A dispositional order has been entered pursuant to RCW 13.34.130;

(iii) At the time of the hearing on the guardianship petition, the child has or will have been removed from the custody of the parent for at least six consecutive months following a finding of dependency under RCW 13.34.030;

(iv) The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

(v) *There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future*; and

(vi) The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to provide care for the child until the child reaches age eighteen.

(Emphasis added.)

A guardian maintains physical and legal custody of a child. RCW 13.36.050(2). Also, a guardian has the right to give consent for the child in health care and educational matters, as well as the duty to protect, feed, clothe, nurture, discipline, and educate the child. RCW 13.36.050(2)(a)-(d). The parent retains a right of contact with the child as determined by the court. RCW 13.36.050(1)(d).

The legislature found that guardianship was an appropriate plan for a dependent child who cannot safely be reunited with his or her parents. RCW 13.36.010. However, the legislature also expressed its concern "that parents not be pressured by the department into agreeing to the entry of a guardianship when further services would increase the chances that the child could be reunified with his or her parents." RCW 13.36.010.

H.S. contends that substantial evidence does not support the trial court's finding there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. He maintains that without any conditions to be remedied, the court cannot enter such a finding as required by RCW 13.36.040(2)(c)(v). H.S. is correct.

To grant a guardianship petition, the court must find that "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.36.040(2)(c)(v). The "little likelihood" finding in RCW 13.36.040(2)(c)(v) parallels the same required finding in termination proceedings. *Compare* RCW 13.36.040(2)(c)(v) *with* RCW 13.34.180(1)(e). In termination proceedings, the little likelihood finding is based on whether the outstanding parental deficiencies can be remedied in the near future. *In re Dependency of T.R.*, 108 Wn. App. 149, 165, 29 P.3d 1275 (2001).

10

A prerequisite to the little likelihood finding is an outstanding parental deficiency to be corrected. Without a parental deficiency, there is no condition to be remedied. In H.S.'s situation, in the September 2011 review hearing, the trial court specifically found that H.S.'s parental deficiencies had been remedied, and that the legal presumption was that D.S. should be returned to his father. Also, in the guardianship proceeding, the trial court found that H.S. complied with all services recommended for him in the dependency action. DSHS did not challenge this finding of fact. Accordingly, it is a verity on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

The Department concedes that H.S. complied with all required services and that H.S. was clean and sober. However, the Department argues that this finding does not end the inquiry by the trial court. The Department's position focuses on the second part of the required finding that D.S. could be returned in the near future. It contends that H.S.'s compliance with services was too late to allow a reunification with D.S. in Mexico because reunification could not be accomplished in the near future. The trial court found that the near future for D.S. was two to three months and that it would take longer than that to effectuate a transition into H.S.'s home.

The Department misreads the required "little likelihood" factor in RCW 13.36.040(2)(c)(v). This section states in full, "There is little likelihood that conditions will be remedied *so* that the child can be returned to the parent in the near future." RCW 13.36.040(2)(c)(v) (emphasis added). As explained in *In re Dependency of T.R.*, the "little likelihood" factor concerns whether the parental deficiencies can be remedied in the near future. 108 Wn. App. at 165 (quoting RCW 13.34.180(1)(e)). Absent a parental deficiency that is in need of correction, the factor does not inquire into logistical steps that would need to be taken to relocate the child. In other words, the fact that the child cannot be returned in the near future is irrelevant unless the parent has an outstanding deficiency that is preventing the return.

The use of the conditional conjunction "so" in the "little likelihood" factor indicates that the timeliness of the return of the child is dependent on the correction of parental deficiencies. Had the legislature intended to divorce the two issues, it could have done so. For instance, the statute could have read, "There is little likelihood that conditions will be remedied *and* that the child can be returned to the parent in the near future." The use of "so" instead of "and" is crucial to the reading of the factor.

12

Here, evidence does not support the trial court's finding that "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the parent[] in the near future." CP at 17. Instead, a prior review hearing established that H.S. corrected all of his parental deficiencies. The court found that H.S. complied with all services recommended for him in the dependency action and was clean and sober. Thus, parental deficiencies are not preventing D.S. from being returned to H.S. in the near future.[1] The order granting guardianship is vacated.

The court erred by finding that there was little likelihood that conditions will be remedied so that D.S. could return to H.S. in the near future.

---

[1] This case is not controlled by the outcome of *In re the Dependency of J.B.S.*, 123 Wn.2d 1, 863 P.2d 1344 (1993). In *J.B.S.*, the Department sought to place J.B.S. with his father in Mexico after the Department believed the mother had abandoned the child. *Id.* at 3. However, expert testimony established that J.B.S. would be seriously harmed if he was severed from contact with his foster parents, mother, and siblings. *Id.* at 9. The Supreme Court reversed the superior court, concluding that the best interests of the child was paramount and had not been established by the evidence. Here, D.S.'s situation is different because it involves a guardianship and not a dependency. The goal of a dependency hearing is to determine the welfare of the child and his or her best interests. *In re Welfare of Becker*, 87 Wn.2d 470, 476, 553 P.2d 1339 (1976). However, to establish guardianship, the best interests of the child is not the only requirement that needs to be established. The court must find the remaining requirements in RCW 13.36.040(2)(c). While D.S.'s guardianship petition satisfied the best interests of the child requirement in RCW 13.36.040(2)(a), it did not establish the requirement in RCW 13.36.040(2)(c)(v). Therefore, unlike *J.B.S's* dependency determination, the trial court's finding of the best interests of the child requirement does not control the outcome of the guardianship petition.

No. 30981-9-III
*In re Guardianship of D.S.*

Given our disposition of this issue, we need not address H.S.'s other contentions.

We vacate the guardianship and remand for reinstatement of the dependency.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Fearing, J.

14