OWENS, J.
¶ 1 Dependency proceedings are not uniform, although each creates a tension between the State's ability to protect children as parens patriae and the fundamental familial rights of the people who are involved in the proceedings. In some instances, such as when the parents agree to the dependency or when the State does not assume legal or physical custody of the child, this tension will be lessened. In other instances, where the dependency is contested or when the State assumes custody of a child, the tension may be heightened. Accordingly, the amount of process due to children in dependency proceedings will vary with each case.
¶ 2 The legislature gave children a discretionary right to counsel in dependency proceedings in RCW 13.34.100(7)(a). The petitioners argue that our constitution requires that all children be appointed counsel at all stages of the dependency proceedings. For the following reasons, we find that RCW 13.34.100(7)(a) is adequate under article I, section 3 of the Washington Constitution. Further, we find that in this case the trial court did not abuse its discretion in denying a motion to appoint counsel. Finally, in light of amendments to GR 15, we hold that confidential juvenile court records remain sealed and confidential on appeal, recognizing the abrogation of In re Dependency of J.B.S., 122 Wash.2d 131, 856 P.2d 694 (1993). Accordingly, we grant the joint motion to seal.
FACTS AND PROCEDURAL POSTURE
¶ 3 This matter involves two unrelated juveniles, E.H. and S.K.-P., in unrelated dependency proceedings. R.R., E.H.'s mother, and S.K.-P. both challenge the validity of RCW 13.34.100 's discretionary standard for appointment of counsel for children in dependency proceedings and seek instead a categorical right to counsel for all children in dependency proceedings. We consolidated these cases to address that issue. R.R., S.K.-P., and the Department of Social and Health Services (Department) jointly moved to seal the appellate records and to use the parents' and children's initials in publicly filed documents. R.R. additionally challenges the juvenile court's denial of her motion for counsel for E.H.
In re Dependency of E.H.
¶ 4 In 2013, E.H.'s mother, R.R., was sent to prison in California with a scheduled release date in July 2019. She arranged for a family friend to live in the family home and care for her six children while she was incarcerated. Six months after assuming responsibility for the children, the friend sent three of the children (not including E.H.) to live with another friend, who physically and emotionally abused the children in his care. R.R. was not aware of this abuse as it was occurring.
*590 ¶ 5 In May 2014, the children moved into the home of another family friend, and the Department filed a dependency petition. R.R. entered an agreed order of dependency as to all six of her children in September 2014. E.H. was six years old when the dependency petition was filed, and it took about eight months to find a stable placement. E.H. and the siblings were placed in foster care in December 2014. E.H. was sent to three respite placements over the course of three months. Finally, on January 30, 2015, E.H. was placed in E.H.'s current foster home. E.H. has stated a strong desire to stay in the current placement until R.R. can return from prison.
¶ 6 E.H. has a court-appointed special advocate (CASA) who fulfills the role of a guardian ad litem (GAL) by representing and advocating for E.H.'s best interests throughout the dependency proceedings and informing the court of E.H.'s stated interests. At a February 2016 permanency planning hearing, the CASA supported a primary plan of terminating R.R.'s parental rights so that E.H. could be adopted. In May 2016, the CASA added guardianship as a secondary possibility based on E.H.'s stated interest in family reunification, noting that E.H.'s current foster placement was a good environment and that the foster parents were willing to serve as long-term guardians. However, the CASA continued to advocate for termination of R.R.'s parental rights based on the CASA's assessment of E.H.'s best interests.
¶ 7 On August 17, 2016, R.R. filed a motion for appointment of counsel on E.H.'s behalf. A superior court commissioner denied the motion and the superior court denied the mother's motion to revise in a memorandum opinion. The court found no basis for construing the state due process protection more broadly than its federal counterpart after analyzing the Gunwall factors and therefore considered only whether the Fourteenth Amendment to the United States Constitution required appointment of counsel. State v. Gunwall, 106 Wash.2d 54, 62, 720 P.2d 808 (1986).
¶ 8 Beginning from the premise that there is no federal due process right to appointed counsel for all children in dependency cases, the court analyzed the Mathews factors as applied to E.H.'s case individually. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The court recognized the importance of the interests at stake, but also noted E.H.'s CASA was actively involved in E.H.'s case and had been forthright in conveying E.H.'s stated preferences to the court, even though the CASA believed those preferences were contrary to E.H.'s best interests. Critically, although E.H.'s CASA believed that termination of R.R.'s parental rights was in E.H.'s best interest and E.H. continued to desire reunification as a permanency plan, at the time the motion for counsel was made termination was not an issue. The issues being addressed at that 90 day review hearing related to visitation between E.H. and E.H.'s siblings. E.H., E.H.'s CASA, and all persons present supported visitation. The court thus saw "no benefit to [E.H.] in appointing counsel at this juncture" and denied the motion to revise, noting that if the Department moved to terminate and E.H. remained opposed to that position, the issue of appointment of counsel would be revisited. Pet'r's Suppl. Br. (E.H.), J.A. at 10.
¶ 9 R.R. sought discretionary review. A commissioner at Division One of the Court of Appeals denied review, and the Court of Appeals denied the mother's motion to modify. This court granted the mother's motion for discretionary review and consolidated this case with In re Dependency of S.K.-P.
In re Dependency of S.K.-P.
¶ 10 S. K.-P. and two half-siblings were removed from their home after allegations of abuse. S.K.-P. was placed in S.K.-P.'s grandmother's home. Based on its most recent investigation, the Department filed a dependency petition in November 2014, when S.K.-P. was seven years old, and the court appointed S.K.-P. a GAL. In January 2015, S.K.-P.'s mother entered an agreed order of dependency, continuing S.K.-P.'s placement with the grandmother. In February 2015, S.K.-P.'s GAL filed a report with the court, stating that S.K.-P. reported no concerns with the placement and that S.K.-P. has everything S.K.-P. needs and feels safe in the home. In July 2015, the GAL reported that *591 S.K.-P. was having regular visitation with both parents. In September 2015, the court ordered that S.K.-P.'s mother could resume providing care.
¶ 11 Five days later, through an attorney who appeared for the limited purpose of the motion only, S.K.-P. moved for appointed counsel. With the motion, S.K.-P. submitted a declaration expressing a desire for maternal placement but challenging visits by the father. The father had no relationship with S.K.-P. prior to the dependency, and according to the grandmother, he was "known for illegal activity in the community and for perpetrating domestic abuse against [S.K.-P.'s] mother." Clerk's Papers (S.K.-P.) at 29. S.K.-P. had previously reported to the CASA frightening thoughts of being removed and placed with the father. S.K.-P. therefore declared, "I want an attorney to help me with these things and help tell the judge what I want." Id. at 138.
¶ 12 S.K.-P.'s mother supported the motion, but the Department opposed it and S.K.-P.'s GAL was neutral. The court held a hearing and then entered an order denying the motion for counsel without prejudice. The trial court found that based on the Mathews factors, there was no need to appoint counsel because S.K.-P.'s interests were adequately safeguarded by the GAL and by S.K.-P.'s mother, who was represented by counsel and whose interests aligned with S.K.-P.'s.
¶ 13 The Court of Appeals granted S.K.-P.'s motion for discretionary review, in which she argued that all children have the right to attorneys in dependency proceedings. On that same day, the Department dismissed S.K.-P.'s dependency petition, and S.K.-P. was returned to the mother's custody. In re Dependency of S.K.-P., 200 Wash. App. 86, 92, 401 P.3d 442 (2017). On its own motion, the court considered whether to dismiss the appeal as moot.
¶ 14 In light of this court's guidance in Sorenson v. City of Bellingham, 80 Wash.2d 547, 496 P.2d 512 (1972), the Court of Appeals declined to dismiss and ultimately held that children in dependency proceedings do not have a categorical right to counsel. Instead, the Court of Appeals held that juvenile courts should continue to use the Mathews balancing test to appoint counsel on a case by case basis. S.K.-P., 200 Wash. App. at 92, 401 P.3d 442. S.K.-P. filed a petition for review, which this court granted, and consolidated with In re Dependency of E.H., 189 Wash.2d 1030, 408 P.3d 1094 (2017).
ISSUES
1. Is the mechanism for appointment of counsel for children contained within RCW 13.34.100(7) sufficient to protect the due process rights of children in dependency proceedings under article I, section 3 of the Washington Constitution ?
2. Did the juvenile court abuse its discretion by denying the motion to appoint counsel for E.H.?
3. Should the joint motion to seal the records of these consolidated cases be granted?
ANALYSIS
1. Facial Procedural Due Process Challenge and the Right to Counsel
¶ 15 Our current statutory law grants children a discretionary right to counsel. A child, a parent, a guardian, a caregiver, or the Department may petition the court to appoint counsel at public expense to represent a child in a dependency proceeding. RCW 13.34.100(7)(a). The court may also appoint an attorney on its own initiative. Id. In 2012, this court addressed whether this discretionary right, along with the right to appellate review, was sufficient under the United States Constitution's guaranty of due process at termination proceedings. In re Dependency of M.S.R., 174 Wash.2d 1, 20, 271 P.3d 234 (2012). We are now tasked with answering whether RCW 13.34.100(7)(a) is sufficient at the dependency stages and under the state constitution's corollary provision.
¶ 16 The appellants contend that the state due process clause is more protective than its federal counterpart and that therefore M.S.R. does not control. See M.S.R., 174 Wash.2d at 20 n.11, 271 P.3d 234 (declining to address state constitutional claims). This opinion turns first to our recent state precedent holding that in similar contexts, *592 article I, section 3 should not be interpreted independently of its federal counterpart before using the Gunwall factors to support that conclusion.
A. This Court Should Consider Federal Precedent
i. Recent State Precedent
¶ 17 In 2011, this court applied the Gunwall factors to determine whether, in the context of appointment of counsel for children in initial truancy hearings, the state due process clause was broader than the federal counterpart. Bellevue Sch. Dist. v. E.S., 171 Wash.2d 695, 714, 257 P.3d 570 (2011). We found that it was not. Id. Turning to federal guidance, we found that procedural due process did not require appointment of counsel for children in initial truancy hearings, notwithstanding the potential of a future contempt order stemming from the initial truancy hearing. Id.
¶ 18 More recently, in In re Welfare of A.W. , this court held that in the context of a dependency guardianship proceeding,[1] "[t]he Washington Constitution, article I, section 3, does not afford greater due process protection than the United States Constitution." 182 Wash.2d 689, 701-02, 344 P.3d 1186 (2015). In A.W., this court held that the establishment of a dependency guardianship by a mere preponderance of the evidence was adequate under both the federal and state due process clauses. Id. at 702-03, 344 P.3d 1186.
¶ 19 In 2012, this court addressed whether discretionary appointment of counsel for children at termination hearings satisfied federal due process requirements. In re Dependency of M.S.R., 174 Wash.2d at 20, 271 P.3d 234. We unanimously found that the Mathews test, applied on a case-by-case basis, provided adequate protection. Id. Although we did not reach the state constitutional question due to waiver, see id. n.11, 271 P.3d 234, if we had grave concerns about the article I, section 3 's independent protections, we could have used our inherent authority to reach the issue ( Alverado v. Wash. Pub. Power Supply Sys., 111 Wash.2d 424, 429, 759 P.2d 427 (1988) ( WPPSS ) ) or directed the parties to submit supplemental briefing on that issue.
¶ 20 Thus, our recent precedent supports a finding that article I, section 3 should not be interpreted independently from its federal counterpart in the context of appointment of counsel for children. The same outcome would be reached through applying the Gunwall factors to this specific case.
ii. Gunwall Analysis
¶ 21 In Gunwall, we set forth the following nonexclusive factors to be considered when determining whether a provision of the state constitution should be interpreted independently of its corresponding federal constitutional provision: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." 106 Wash.2d at 58, 720 P.2d 808.
¶ 22 The first, second, and third factors all support applying federal precedent because the texts are "nearly identical," and there is no legislative history supporting an independent analysis. See State v. Wittenbarger , 124 Wash.2d 467, 480, 880 P.2d 517 (1994) ; State v. Ortiz, 119 Wash.2d 294, 303, 831 P.2d 1060 (1992).
¶ 23 The fourth factor, preexisting state law regarding appointment of attorneys for children, also does not support independent analysis. Historically, the statutory and common law viewed the presence of a guardian as necessary to protect the interests of children who were parties to an action for so long as they suffered under the incapacity of infancy. See CODE OF 1881, ch. I, § 12. The common law incapacity of minors persists, with two exceptions for actions relating to domestic violence and child truancy. RCW 4.08.050. Thus, the general rule in Washington *593 has historically been that children cannot appear in court as parties and must instead appear by and through guardians. This cuts against any finding that the state due process clause expands protections for the appointment of attorneys for children, as historically children have not had the right to appear in court at all, let alone with counsel.[2]
¶ 24 The fifth factor, structural differences between the state and federal constitution, supports independent interpretation of the state constitution in every case. State v. Foster, 135 Wash.2d 441, 458-59, 957 P.2d 712 (1998) (plurality opinion). The sixth factor, whether the matters are of particular state interest or local concern, more accurately addresses whether there "appear[s] to be a need for national uniformity" regarding the subject matter. Gunwall, 106 Wash.2d at 62, 720 P.2d 808. There is no need for national uniformity for procedures in dependency hearings, and thus the sixth factor favors independent state analysis.
¶ 25 On balance, the Gunwall factors support utilizing federal guidance. Only the fifth and sixth factors support independent analysis. The other four factors, as well as our recent precedent in the dependency context, holding that article I, section 3 's protections are coextensive with the Fourteenth Amendment's, support following federal precedent regarding when a case-by-case approach to appointment of counsel is appropriate. See A.W., 182 Wash.2d at 701-02, 344 P.3d 1186.
B. Federal Guidance Supports a Case-by-Case Approach
¶ 26 The purpose of the test set forth in Gunwall is to determine when and to what extent " '[f]ederal precedent in areas addressed by similar provisions in our state constitutions can be meaningful and instructive.' " Gunwall, 106 Wash.2d at 60, 720 P.2d 808 (quoting State v. Hunt, 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J., concurring) ). The United States Supreme Court addressed the issue of whether indigent parents have a categorical right to representation in termination proceedings. Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In applying the case-by-case approach, the Lassiter Court relied on an earlier case, Gagnon, which addressed whether due process required the appointment of counsel at public expense for indigent probationers in probation revocation hearings. Id. (citing Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ). Although it addressed counsel in a different type of proceeding, the reasoning in Gagnon supports applying the case-by-case approach in the dependency setting.
¶ 27 In Gagnon, the Court identified a number of factors that were relevant in finding a case-by-case approach appropriate. Gagnon, 411 U.S. at 789, 93 S.Ct. 1756. First, the court noted the rehabilitative purpose of probation hearings and that the flexibility that hearing boards are afforded in those proceedings allows them to exercise both a quasi-judicial role as a fact finder and an equitable role in helping probationers reintegrate into society. Id. at 786-89, 93 S.Ct. 1756.
¶ 28 Second, in contrasting probation revocation hearings with criminal trials, the Court noted that in criminal trials the State is represented by a prosecutor, that the formal rules of evidence are in force, that there *594 are a number of procedural rights that may be waived by a criminal defendant if not timely raised, and that communicating arguments to untrained jurors may be aided by the assistance of counsel. Id. In probation revocation hearings, the State is represented not by a prosecutor but by a parole officer, who has a dual interest in rehabilitation and protecting the public from recidivism. Id. Likewise, evidentiary and procedural rules are relaxed in probation proceedings. Id. Finally, the members of the hearing board, the ultimate decision-makers, "are familiar with the problems and practice" of the system. Id. at 789, 93 S.Ct. 1756.
¶ 29 Because of these differences, the Court held that "[t]he need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." Id. Therefore, rather than create what it called "a new inflexible constitutional rule with respect to the requirement of counsel," the Court left the decision as to the need for counsel to be made on a case-by-case basis. Id. at 790, 93 S.Ct. 1756. This approach makes sense in dependency proceedings, where the State assumes the protective responsibilities of parents.
¶ 30 Dependency proceedings are more similar to probation revocation hearings than criminal hearings, in particular as they relate to the children who are the subject of the proceedings. Unlike the parents, who stand in equipoise with the State and whose interests are more directly adverse to the State's, a child's relationship with the Department is similar to a probationer's with a probation officer. The purpose of a dependency hearing is to serve and protect the best interests of the child, and that purpose makes those hearings orthogonal to truly adversarial proceedings.
¶ 31 Furthermore, the State is not always a party, let alone represented by counsel. Dependency petitions may be brought by "[a]ny person." RCW 13.34.040(1). Family members can petition a court to find a child dependent in order to be granted guardianship over the child. Juveniles themselves may initiate dependency actions in order to gain a predicate order to obtain special juvenile immigrant status and the resulting relief from removability. 8U.S.C. § 1101(a)(27)(J). When a private party initiates a dependency petition, the Department is not involved, and, as in Gagnon, there is not an asymmetry of representation. Similarly, the rules of evidence do not necessarily apply in dependency proceedings. See JuCR 1.4 ; ER 1101(c)(3) (evidence rules inapplicable in disposition, review, and permanency planning hearings). And, as in probation revocation hearings, the decision-maker in dependency hearings is not a jury in need of explanation, but a judicial officer who is familiar with the system. Accordingly, as in Gagnon, a case-by-case system for appointment of counsel in dependency proceedings is more appropriate than a categorical approach.
¶ 32 The Gagnon Court noted that in certain cases, fundamental fairness requires the appointment of counsel at public expense and listed some scenarios in which this would presumptively be the case. Gagnon, 411 U.S. at 790, 93 S.Ct. 1756. Those scenarios included when the underlying facts are disputed, when the reasons given in opposition of the deprivation of liberty are complex or otherwise difficult to develop or present, and when the person requesting counsel is not capable of speaking effectively for himself or herself. Id. at 790-91, 93 S.Ct. 1756. In addition to the age and custodial status of the child, courts should consider whether a particular scenario warrants appointment.
¶ 33 When a child disputes the facts that form a basis for a dependency, when a child presents a complex or sophisticated argument against the State's proposed decision, or when a child old enough to voice a preference is rendered voiceless in the proceedings because his or her stated wishes are misaligned with his or her GAL's assessment of his or her best interests, appointment of counsel is likely proper.
¶ 34 Further, the Court in Gagnon required that in every case, the basis for the denial of a request for counsel be "stated succinctly in the record." Id. at 791, 93 S.Ct. 1756. We agree with this requirement, as well, to preserve the additional safeguard of appellate review. See *595 M.S.R., 174 Wash.2d at 21, 271 P.3d 234. To protect against challenges to dependency proceedings, we urge trial courts to sua sponte raise the issue of representation for children at the earliest practicable time in the proceedings.
¶ 35 Finally, while the United States Supreme Court in Lassiter held that the Mathews test was appropriate for a case-by-case determination of whether an indigent parent in a termination proceeding was entitled to counsel, it held that courts must then set the net weight of the Mathews elements against the presumption that there is a right to appointed counsel only where the requester's personal freedom is at risk. Lassiter, 452 U.S. at 27, 101 S.Ct. 2153. The source of that presumption was federal precedent. Id. at 26, 101 S.Ct. 2153 (citing Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) ). Because no such state precedent applies, it does not follow that a federal presumption against counsel should be imported into this analysis. Therefore, the burden of a movant requesting counsel for a child is the preponderance standard, and movants need not rebut any presumption against appointment of counsel.
C. Independent State Constitutional Analysis
¶ 36 Although we hold that federal precedent should be used to guide our reasoning, the due process protection in our state constitution is generally the same as the federal guaranty, even in the context of dependency proceedings.[3] For regardless of whether we turn to federal guidance to interpret the state protection, the true "question is what the state's guarantee means and how it applies to the case at hand." Malyon v. Pierce County, 131 Wash. 2d 779, 798 n.30, 935 P.2d 1272 (1997). Because the Mathews test is adequate to ensure procedural due process protections under both the state and federal constitutions, the question of RCW 13.34.100(7)(a) 's constitutionality under either is largely the same.
¶ 37 Our state guaranty of due process shares the same basic concerns as the federal counterpart. A procedural due process challenge under our state provision turns on whether the increased decisional accuracy afforded by additional procedure to safeguard against an erroneous deprivation of a private interest is outweighed by the State's legitimate reasons for denying more protections. See E.S., 171 Wash.2d at 717, 257 P.3d 570 (Chambers, J., dissenting) ("Nevertheless, the balancing test adopted by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), offers a valuable tool when determining what is required under article I, section 3 as well as the Fourteenth Amendment to the United States Constitution.").
¶ 38 This analysis requires us to compare the status quo to the procedures sought and identify (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. 893 ; E.S., 171 Wash.2d at 705, 257 P.3d 570.
¶ 39 Here, the comparison to be made is between the current statutory regime, in which children have a discretionary right to petition for counsel, and a strict rule under which all children in dependency proceedings must be represented by attorneys, absent waiver. Applying the Mathews factors to this inquiry, the appropriateness of a case-by-case approach is made all the more clear.
¶ 40 First, the private interest will vary depending on the circumstances. In some cases, such as when a child is found dependent *596 due to the abuse or neglect of one parent under RCW 13.34.030(6)(b) but remains in the legal and physical custody of the other parent, the child's interests will be very low. Likewise, even if a child is found dependent with regard to both parents, the statutory preference for placement is with relatives. RCW 13.34.060(2), .138(2)(c)(viii). Thus, in many instances, the State does not assume custody of the child and does not make important decisions about placement, medical care, or education.
¶ 41 Second, the amount of decisional accuracy added by adopting the proposed rule of automatic appointment of counsel is based on both the increased decisional accuracy afforded by attorneys when they are constitutionally warranted and the likelihood that the current case-by-case approach fails to appoint an attorney when one is required. If the current system leads to the appointment of counsel whenever it is constitutionally required, then the proposed automatic appointment rule provides no additional constitutional protections. This calculation is exceedingly difficult, as whether counsel is required depends on the facts of each underlying case.
¶ 42 Further, the amount of increased decisional accuracy afforded by an attorney will vary. Procedural due process protects against erroneous state actions. This will occur in the dependency setting only when the State abridges a child's liberty based on an erroneous determination of the best interest of that child. If a child's stated interests are indeterminable due to infancy or if they are aligned with his or her GAL's assessment of what is in his or her best interest, then the increased decisional accuracy of an attorney will likely be low. While there may be substantial policy arguments supporting the appointment of attorneys for children to decrease the duration of dependencies and increase the children's comfort and agency in the courtroom, it is only the value with regard to decreasing erroneous deprivations of liberty that is considered under procedural due process. Those other policy arguments are legislative in nature and should be balanced against other public interests and concerns. See SUBSTITUTE H.B. 1251, 65th Leg., Reg. Sess. (Wash. 2017); S.B. 5363, 65th Leg. Reg. Sess. (Wash. 2017) (proposed amendments to RCW 13.34.100 that would grant a categorical right of counsel to all children in dependency proceedings).
¶ 43 Finally, the government's interest against adopting a categorical requirement of representation is high. Concerns include both cost and practicability, as some counties may be faced with a shortage of attorneys for children. See ENGROSSED SUBSTITUTE S.B. REP. 6126, 63d Leg., Reg. Sess. (Wash. 2014). Requiring the appointment of counsel prior to removal, as petitioners request, lessens the State's ability to expediently protect at-risk children. Because each family is different, each dependency proceeding is different. Those differences are accounted for in the flexibility afforded to trial courts under the current case-by-case regime, and that flexibility is a boon to the State's ability to protect children.
¶ 44 Thus, analyzing the state provision independently from its federal counterpart, the discretionary right to counsel granted to children in dependency proceedings is adequate under our state's due process guaranty.
D. Mathews Remains the Test for Appointment of Counsel
¶ 45 For the above reasons, we find that the statutory scheme regarding appointment of counsel for children is constitutionally adequate under article I, section 3 of the Washington Constitution. However, we emphasize that in many instances due process might require appointment of counsel, and that trial courts should address the issue of appointment of counsel on the record at as early a time as is practicable, to preserve the right of appeal.
¶ 46 In determining whether counsel is required, courts are to apply the Mathews factors on a case-by-case basis, taking into account the specific interests at risk in each instance, the additional decisional accuracy that would be afforded by appointing an attorney, and the government's interest in not appointing counsel. Mathews , 424 U.S. at 335, 96 S.Ct. 893. Although not an *597 exhaustive list, courts should consider at least the age of the child, whether the child is in legal or physical custody of the State, whether the child's stated interests are aligned with the GAL's assessment of the child's best interest (if a GAL has been appointed) or with another represented party's desires, whether the child disputes the facts that form a basis for the dependency determination, whether the child presents a complex argument against the State's proposed action, and the issues that are actually disputed or to be addressed in the hearing.
2. The Trial Court Did Not Err in Denying E.H. Counsel
¶ 47 In addition to the facial challenge to the statutory scheme, E.H. challenges the denial of the motion for appointment of counsel for E.H. in that case.[4] While categorical Mathews challenges are questions of pure law, whether E.H. individually was entitled to an attorney under the Mathews test is a mixed question of law and fact. As such, the standard of review typically "depends-on whether answering it entails primarily legal or factual work." U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Management LLC v. Vill. at Lakeridge, LLC, --- U.S. ----, 138 S.Ct. 960, 967, 200 L.Ed.2d 218 (2018). The constitutional nature of the issue "favors de novo review even when answering a mixed question primarily involves plunging into a factual record." Id. at n.4, 138 S.Ct. 960. Thus, on appeal, the determination of whether an attorney was constitutionally required under Mathews is performed de novo, with deference given to the factual findings made by the trial court in the first instance, where appropriate.
¶ 48 In this case, the Mathews factors did not require appointment of counsel. This is chiefly because of the "specific circumstances ... at the time the motion for appointed counsel [wa]s made." Dissent at 608 (citing M.S.R., 174 Wash.2d at 22 n.13, 271 P.3d 234 ). The particular interest that was at risk of erroneous deprivation when the motion was made involved E.H.'s visitation with siblings. No decisions regarding placement were at issue. At the time the motion was made, being returned to R.R.'s care was not an option due to her incarceration. Nor was the Department moving to terminate R.R.'s parental rights. E.H. had been living in the same foster placement for over two years, and there was no indication in the record of any concerns regarding the safety or stability of that placement. Thus, the interest at risk of being erroneously deprived when the motion was made was E.H.'s interest in sibling visitation.
¶ 49 Without minimizing that interest, under the Mathews prong, that interest is of a comparatively lesser constitutional magnitude than an interest in physical autonomy or medical or educational decisions, although it is a recognized liberty interest.
¶ 50 Under the second Mathews prong, however, it is unclear what additional decisional accuracy an attorney for E.H. would have provided the trial court in making its decision regarding visitation. Many of the parties present had attorneys, and their interests overlapped with E.H.'s. E.H.'s CASA was present and stated E.H.'s interest in visits. The trial court identified the exemplary performance of the parties, attorneys, and GALs at raising issues regarding visitation preemptively and quickly, and stressed that there was not an imminent risk of an erroneous deprivation. There was no misalignment between E.H. and E.H.'s CASA regarding visitation, and thus the risk of an erroneous deprivation of that interest was low.
¶ 51 The trial court accurately identified that the State's primary interest was reaching permanent and safe placement for E.H. and that that interest was not frustrated by the appointment of counsel for E.H. It also identified a financial interest, and while that interest is not sufficient to deny a safeguard to protect against an erroneous deprivation, at the time the motion for counsel was made, appointing counsel for E.H. would not have added any meaningful protections regarding *598 the only issue being addressed at that time. Everyone present agreed that sibling visitation was appropriate. Thus, the denial of that motion for appointment of counsel, brought at that time, was not error.
¶ 52 The commissioner noted that if the Department moved to terminated R.R.'s parental rights and E.H. remained at odds with the CASA's recommendation, the issue of appointment of counsel should likely be reconsidered. The Department has moved to terminate, and this court stayed consideration of those proceedings pending the publication of this decision. Once that stay is lifted, the trial court should reconsider the appropriateness of counsel for E.H. in light of this decision, applying the Mathews test to the particular interests E.H. is at risk of erroneously losing.
3. The Record Is Sealed under GR 15(g)
¶ 53 The parties jointly moved to seal records in the underlying juvenile court files and the appellate files in this matter, and to require the use of initials to protect the identity of the children and parents involved in these disputes. A commissioner of the Court of Appeals has granted much of this relief. The remaining request is to seal the trial court records contained in appellate files. The parties' joint GR 15 motion to seal these records is granted. Further, to provide guidance to future parties and intermediate appellate courts, we hold that trial court records of nondelinquency juvenile court hearings should remain sealed on appeal, recognizing GR 15(g) 's abrogation of J.B.S., 122 Wash.2d at 137-38, 856 P.2d 694.
¶ 54 RCW 13.50.100 provides that records of juvenile court hearings not relating to juvenile offenses "shall be confidential" and proscribes limited instances in which they may be released. RCW 13.50.100(2). In 1993, this court held that the requirement of confidentiality contained in RCW 13.50.100 does not apply to appellate court proceedings based on the definition of "court" contained elsewhere within the Juvenile Court Act. J.B.S., 122 Wash.2d at 135, 856 P.2d 694. Thus, this court found that a GR 15 motion to seal is required to seal such records. Id. at 137, 856 P.2d 694. It directed lower courts to use the Ishikawa factors when determining whether to grant such a motion but, resolving the matter on statutory interpretation grounds, did not reach the constitutional question of whether article I, section 10 applies to juvenile records. See id. at 137-38, 856 P.2d 694 ; Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 38, 640 P.2d 716 (1982).
¶ 55 Two significant changes have occurred since this court's decision in 1993. First, in 1997, GR 15 was amended to include a new provision. Second, we addressed the constitutional question that we declined to reach in J.B.S. and ruled that under the experience and logic test, article I, section 10 does not apply to juvenile records. See State v. S.J.C., 183 Wash.2d 408, 352 P.3d 749 (2015).
¶ 56 In 1997, GR 15 was amended to include what is now GR 15(g) : "Use of Sealed Records on Appeal." See In re Dependency of G.A.R., 137 Wash. App. 1, 13, 150 P.3d 643 (2007). That provision provides that "[c]ourt records sealed in the trial court shall be sealed from public access in the appellate court subject to further order of the appellate court." GR 15(g). As the Court of Appeals in G.A.R. held, GR 15(g) preserves the confidentiality of juvenile court files and records. G.A.R. , 137 Wash. App. at 13, 150 P.3d 643. This new provision partially abrogated J.B.S. to the extent that our opinion in that case held that confidential trial records are unsealed on appeal. Accordingly, records that are confidential under RCW 13.50.100(2) remain confidential on appeal, subject to the exceptions provided in RCW 13.50.100 and RCW 13.50.010. Such records should be sealed from public access without need for a party to bring a GR 15 motion to seal.
CONCLUSION
¶ 57 Under both the state and federal constitutions, the discretionary standard for appointment of counsel in RCW 13.34.100(7)(a) provides children with sufficient due process protection, provided that juvenile courts apply the Mathews factors on the record at an early practicable time and without a presumption against appointment of counsel. Review of a juvenile court's denial of appointed counsel should be performed de novo, with *599 due deference given to findings of fact made by the juvenile court in the first instance. We are confident in the ability of trial judges to perform this function, as the Mathews test is familiar to judges and has proved capable of protecting procedural due process for decades. On review of the record, we affirm the denial of R.R.'s motion for an attorney for E.H.
¶ 58 We grant the joint motion to seal the appellate record. To provide clarity to intermediate appellate courts, we reach the question of whether such a motion is necessary, given the 1997 amendments to GR 15. Recognizing the abrogation of J.B.S. , 122 Wash.2d at 135, 856 P.2d 694, by the promulgation of GR 15(g), we hold that the confidential nature of dependency proceedings granted by RCW 13.50.100(2) is not lost through appeal. Accordingly, courts of appeal should sua sponte seal the records and appendices of such proceedings, except as provided for in RCW 13.50.100 and RCW 13.50.010.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Wiggins, J.
STEPHENS, J. (concurring in part, dissenting in part)
¶ 59 I join the lead opinion in all respects save for its resolution of the parties' motion to seal the record. I agree with Justice Gordon McCloud's partial dissent that the motion to seal should be denied under article I, section 10 of the Washington State Constitution.

Dependency guardianships are statutory alternatives to the termination of parental rights. In re Guardianship of D.S., 178 Wash. App. 681, 682, 317 P.3d 489 (2013). They are one example of a dependency proceeding (see JuCR 3.11 ). A.W. is a recent, well-reasoned, post- Gunwall precedent where this court found that article I, section 3 should be interpreted consistent with its federal counterpart in the specific context of dependency proceedings.

The dissent cites In re Dependency of J.H, 117 Wash.2d 460, 477, 815 P.2d 1380 (1991) in support of the proposition that children are parties in dependency proceedings. Dissent at 15. This court's statement that the "[l]egislature has determined that children involved in dependency and termination actions are parties to those actions" was dicta and supported by a citation to RCW 13.34.100. J.H., 117 Wash.2d at 477, 815 P.2d 1380. When J.H. was published, RCW 13.34.100 stated in part that "[t]he court, at any stage of a proceeding under this chapter, may appoint an attorney and/or guardian ad litem for a child who is a party to the proceedings ...." Former RCW 13.34.100 (1979) (emphasis added). That statute was amended in 1993, after J.H. was published, and the above italicized portion was removed. RCW 13.34.100 (1993). See Laura Baird, Note, An Inconsistent Invitation: Am I Invited To Be a Party? How Not Affording Party Status to Youth in Washington Dependency Hearings Can Be a Violation of Due Process, 11 Seattle J. For Soc. Just. 715 (2013). This opinion does not take any position on whether children are parties in dependency proceedings and notes the incapacity of infancy only to support the conclusion that preexisting state law regarding appointment of attorneys for children is not more protective than federal law.

The continued viability of the state constitutional analysis of In re Welfare of Myricks, 85 Wash.2d 252, 255, 533 P.2d 841 (1975) and In re Welfare of Luscier, 84 Wash.2d 135, 138, 524 P.2d 906 (1974) is not presented in this case, nor is it questioned by this opinion. Both of those cases predated both Gunwall and Mathews. The contemporary analysis used to determine what protections article I, section 3 provides is different from the analysis employed in those opinions. Those opinions have stood for 40 years, and stare decisis protects their holdings.

The dissent purports to dissent only in part, as it relates to E.H.'s as applied challenge. Dissent at 610-11. In actuality, the dissent presents a facial challenge to RCW 13.34.100 's discretionary appointment mechanism and seeks its invalidation categorically for all children in dependency proceedings. Dissent at 600-08.