IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship of: | No. 86440-8-I |
| E.P. Jr., | DIVISION ONE |
| a Minor Child. | UNPUBLISHED OPINION |

DíAZ, J. — The superior court denied the petition to appoint family friend, Anita Byson, as E.P.'s guardian under the uniform guardianship, conservatorship, and other protective arrangements act, chapter 11.130 RCW (Guardianship Act). The court also ordered a gradual transition from Byson back to E.P.'s father. E.P.'s mother appeals both the denial and the ordered transition. We affirm the trial court's order.

I.      BACKGROUND

Because of his parents' substance use disorders, E.P. first entered foster care when he was born in March 2020. He returned to his parents' custody as they sought treatment. Sometime after E.P. returned home, the substance use disorders resumed. E.P.'s mother also testified that his father was physically abusive, especially when he was drinking.

E.P.'s mother decided that their home was not a suitable environment for E.P. In June 2022, with his mother's agreement, he began living with Byson, a friend of E.P.'s maternal grandmother. Around this time, E.P.'s father was in jail for violating probation conditions.

In August 2022, Byson petitioned to be E.P.'s guardian. The court granted an emergency guardianship while the case was pending. When E.P.'s father was released from jail, he objected to the guardianship. While E.P. lived with Byson, his father participated in supervised and later unsupervised visits.

At the time of the trial on the guardianship petition, E.P. had been living with Byson for over a year. E.P.'s mother testified in support of the guardianship. The court found that continuing the guardianship would be in E.P.'s best interest. However, the court found that Byson had not shown by clear and convincing evidence that E.P.'s father was unwilling or unable to perform the parenting functions listed in RCW 26.09.004(2). The court therefore denied the guardianship petition. The court further ruled that E.P. should gradually transition from Byson's custody to living with his father full-time. The court noted that E.P.'s mother was free to pursue a parenting plan in family court.

E.P.'s mother appeals both the denial of the guardianship petition and the order of transition.

## II.    ANALYSIS

### A.    Standing

As a preliminary manner, E.P.'s father argues that E.P.'s mother is not an aggrieved party and therefore does not have standing to appeal the denial under

RAP 3.1. "Only an aggrieved party may seek review by the appellate court." RAP 3.1. An aggrieved party is one whose property, pecuniary, or personal rights were adversely affected by a trial court's decision. Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 150, 437 P.3d 677 (2019). E.P.'s father points to language in the order stating that E.P.'s mother "can request a parenting plan in family court" and argues that since her parental rights are not explicitly limited by the order, she is not an aggrieved party. We disagree.

Courts interpret "aggrieved party" broadly in cases affecting another type of child custody, i.e., a dependency. See, e.g., In re Dependency of J.W.H., 106 Wn. App. 714, 718-19, 24 P.3d 1105 (2001), reversed on other grounds, 147 Wn.2d 687, 57 P.3d 266 (2002) (holding that non-parent intervenor-parties had standing to appeal agreed dependency order between parents, children's guardian ad litem, and the State because its determination could affect non-parent intervenors' third party custody action and their "established and loving" relationships with the children); In re Welfare of Hansen, 24 Wn. App. 27, 29-30, 35, 599 P.2d 1304 (1979) (holding that former guardians of children had standing to challenge dependency finding based on possible loss of relationship with children).

E.P.'s father attempts to distinguish this matter from the above cases by arguing that a "dependency, unlike a petition for private guardianship, is a 'preliminary, remedial, nonadversary proceeding' where the family members work together to preserve and mend family ties, alleviate the problems which prompted the State's initial intervention, and work to prevent termination." He claims that a guardianship petition "asks the narrower question of whether the court should

immediately transfer the parental powers and duties respecting the child to a person outside of the family unit entirely . . . The aim is not for the parents to collaboratively address intrafamily concerns or mend intrafamily ties." He asserts that, because of this distinction, standing to appeal a guardianship should be interpreted more narrowly than in dependency actions.

While accurate as far as it goes, this distinction is unpersuasive. The plain language of the Guardianship Act indicates that the legislature intended a guardianship to be a process similarly collaborative to dependency actions. See RCW 11.130.215 (2)(a), (4) ("The court shall appoint a person nominated as guardian by a parent of the minor . . . [and] shall state rights retained by any parent of the minor, which shall preserve the parent-child relationship."). We also have held that guardianship is similar to a dependency and distinct from a termination in that it seeks to preserve a parent's rights and their relationship with their child. See In re Dependency of G.C.B., 28 Wn. App. 2d 157, 173-74, 535 P.3d 451 (2023).

Moreover, E.P.'s mother is in support of the guardianship petition because she believes the guardianship is in his best interest and likely because Byson facilitates a relationship between E.P. and his mother, which E.P.'s father may not facilitate. Were we confronted with facts to the contrary, it then would be inconsistent to hold that a parent does not have standing to appeal a decision that they do not think is best for their child and that will certainly impact their relationship with their child. In both ways then, a parent's personal rights would be adversely affected by a trial court's decision. Harmon, 193 Wn.2d at 150. We therefore hold

4

that E.P.'s mother has standing to appeal and proceed to address this matter on the merits.

B.      Clear and Convincing Evidence

Parents have a constitutional right to the "care, custody, and companionship" of their children.  In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980) (citing Stanley v. Illinois, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)).  However, the State has a responsibility to protect children whose safety is "seriously jeopardized by parental deficiencies."  In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007).  The legislature recognized these competing interests in the Guardianship Act.  The statute states, in relevant part, that a court may appoint a guardian for a minor "if the court finds the appointment is in the minor's best interest *and* . . . [t]here is clear and convincing evidence that no parent of the minor is willing or able to exercise parenting functions as defined in RCW 26.09.004*.*"   RCW 11.130.185(2) (emphasis added).

As the nonparent petitioner, Byson had the burden of showing by clear and convincing evidence that E.P.'s father cannot or would not perform the requisite parenting functions.  See In re Custody of Shields, 157 Wn.2d 126, 150, 136 P.3d 117 (2006).  Again, although the trial court found that the guardianship was in the child's best interest, it also found Byson had not produced clear and convincing evidence that the father was unwilling or unable to provide the requisite parenting functions.

We review a trial court's guardianship determination for abuse of discretion.

5

In re Guardianship of L.C., 28 Wn. App. 2d 766, 772, 538 P.3d 309 (2023). "Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'" Id. (quoting State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012)).

We review the court's factual findings for substantial evidence. In re Guardianship of F.S., 33 Wn. App. 2d 24, 35, 559 P.3d 138 (2024), review denied, 4 Wn.3d 1015, 564 P.3d 562 (2025). Under the clear and convincing evidence standard, substantial evidence exists when the fact is "shown by the evidence to be highly probable." In re Dependency of A.N.C., 24 Wn. App. 2d 408, 414, 520 P.3d 500 (2022) (internal quotation marks omitted). This court does not decide credibility of witnesses or weigh evidence. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

To grant the guardianship petition, the court must find by clear and convincing evidence that no parent can provide the following parenting functions:

> (a) Maintaining a loving, stable, consistent, and nurturing relationship with the child; (b) Attending to the daily needs of the child, such as feeding, clothing, physical care and grooming, supervision, health care, and day care, and engaging in other activities which are appropriate to the developmental level of the child and that are within the social and economic circumstances of the particular family; (c) Attending to adequate education for the child, including remedial or other education essential to the best interests of the child; (d) Assisting the child in developing and maintaining appropriate interpersonal relationships; (e) Exercising appropriate judgment regarding the child's welfare, consistent with the child's developmental level and the family's social and economic

circumstances; and (f) Providing for the financial support of the child. RCW 26.09.004(2). The court here analyzed each parental function on the record and heard the following testimony and made the following findings of fact.

E.P.'s father testified that he was "willing to give [his] son the best attention, education, and as much as [he] can" and that he is a "very caring father." E.P.'s father had regularly exercised visits while E.P. resided with Byson. They often hugged and showed affection for each other when they had visits. The court found that E.P.'s father had made efforts to maintain a loving relationship and that he showed he was willing and able to continue. In turn, it is inaccurate that the trial court did not evaluate or make findings as to the initial factor under RCW 26.09.004(2)(a), namely whether the parent could maintain "a loving, stable, consistent, and nurturing relationship with the child."

As to his healthcare, E.P.'s father had taken him to the hospital a few times during his visits. Since E.P.'s father had been attending medical appointments and seemed "willing to continue to do so," the court found that he was able to attend to E.P.'s needs. Although the court was concerned that E.P.'s father "seeks second opinions when he disagrees with the medical professional's opinions . . . until he finds an opinion he likes" and that he was taking E.P. to "unnecessary medical appointments," the court did not find clear and convincing evidence that he would not attend to E.P.'s daily needs.

As to his education, the guardian ad litem testified that E.P.'s father was eager and willing to get E.P. educational services. The court found that he seemed to "understand and want early education" for E.P., and that the fact that he had not

yet set it up did not rise to clear and convincing evidence that he was unwilling or unable to do so.

In short, the court relied on their testimony and found that there was not clear and convincing evidence that E.P.'s father would not exercise appropriate judgment regarding E.P.'s medical and educational welfare.

It is true that the court expressed concern over whether E.P.'s father would facilitate E.P.'s relationships with his mother, grandparents, and Byson. But, despite its concern, the court found that Byson had not met the high threshold of clear and convincing evidence that he would not facilitate those relationships. We cannot say, on this record, that the court abused its discretion in so finding. L.C., 28 Wn. App. 2d at 772.

It is also true that the court did not find the testimony of E.P.'s father credible as to his employment and ability to financially support E.P. Still, the court relied on the guardian ad litem's testimony that the father had an appropriate and safe apartment for he and E.P. to live in together. The court again could not "find by clear and convincing evidence that he's unable to provide financially."

In summary, the court addressed each element it was required to and relied especially on the testimony of the guardian ad litem, whose testimony it found credible, and which we may not question. A.W., 182 Wn.2d at 711. The guardian ad litem's testimony alone would be substantial evidence in support of the court's decision, but there is other testimony supporting its decision as detailed above. The court, therefore, did not abuse its discretion when it denied the petition.

C.   Transition Period

The court ordered that, following its decision, E.P. first would live with his father every other weekend and then every weekend before living with him full time.

Again, a court's guardianship determination is reviewed for abuse of discretion. L.C., 28 Wn. App. 2d at 772. Since each child custody case has unique circumstances, the question of a child's best interest is "inherently factual." In re Dependency of of W.W.S., 14 Wn. App. 2d 342, 352, 469 P.3d 1190 (2020). Abuse of discretion is the appropriate standard for cases where the determination is "fact intensive and involves numerous factors to be weighed on a case-by-case basis" and when the trial court is in the better position to make a determination. L.C., 28 Wn. App. 2d at 772 (quoting Sisouvanh, 175 Wn.2d at 621). The determination that a slow transition is in E.P.'s best interest involves numerous factors and is therefore entrusted to the trial court's discretion.

When the trial court ordered a gradual transition for E.P., it applied RCW 11.130.240(6), which states, "the court may issue an order providing for transitional arrangements that will assist the minor with a transition of custody and is in the best interest of the minor." This statute explicitly addresses termination of minor guardianships, which is not what occurred in this case since a full guardianship was never ordered. RCW 11.130.240. For authority to order the transition, the court relies on RCW 11.130.215(1), which allows the court to "take other appropriate action consistent with this chapter[.]"

Because E.P. had been living with Byson for over a year, the court determined that applying the "transitional arrangements" described in the

termination of guardianship statute would be "other appropriate action" because "in this particular scenario it's very on point," even though Byson was never granted full legal guardianship.  RCW 11.130.240(6).

Each family case is different because "each family is different."  See In re Dependency of E.H., 191 Wn.2d 872, 893, 427 P.3d 587 (2018).  Flexibility allows trial courts to better protect children and address their individual circumstances on a case-by-case basis.  Id.  The legislature's use of "other appropriate action" shows they value this flexibility.  The court's order for a gradual transition is consistent with the legislature's intention that the court have flexibility to address each child's unique circumstances.

The guardian ad litem testified that a slow transition would be in E.P.'s best interest.  Based on that testimony and an understanding that abrupt changes can be destabilizing, it is reasonable for the trial court to determine that a gradual transition is in E.P.'s best interest.  The trial court did not abuse its discretion.

III.    CONCLUSION

We affirm the trial court's order.

Díaz, J.

WE CONCUR:

Colburn, J.                                  Smith, J.

10