IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 38044-1-III |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| H.W.† | ) | |
| | ) | |
| | ) | |

LAWRENCE-BERREY, A.C.J. — Ms. M.W.,[1] the presumed father of H.W., appeals

the dependency court's denial of her motion to appoint an attorney at public expense for

her daughter. We agree with the parties that reversal is required because the court failed

to conduct a sufficient analysis of the relevant due process factors. We reverse the

dependency court's order and remand with instructions.

FACTS

This appeal stems from the dependency proceedings of H.W. H.W.'s mother is

Ms. W., her biological father is Mr. B., and her presumed father is Ms. M.W.

---

† To protect the privacy interests of the minor child, we use the child's initials and
initials for the parties to this action throughout this opinion. Gen. Order for Court of
Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective
September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

[1] Ms. M.W. identifies as female, but considers herself the legal father of H.W.

No. 38044-1-III
*In re Dependency of H.W.*

*Facts underlying dependency*

On November 22, 2020, Ms. M.W. took H.W.'s infant sister, A.W.[2] to an emergency room in Grants Pass, Oregon. The family was traveling from their home in Spokane, Washington, to visit relatives in California when they stopped at a motel where A.W. found a "baggie" in a corner of the bed and began sucking on it. A.W. tested positive for opiates, amphetamines, and benzodiazepines. The Oregon Department of Human Services (DHS) arrived at the hospital to investigate.

Both Ms. W. and Ms. M.W. maintained that the drugs were not theirs. Ms. W. later admitted to a history of substance abuse and stated she had used opiates prior to her pregnancy with A.W. Ms. W. exhibited signs of intoxication but refused to submit to a urinalysis and became combative with the DHS social worker.

Ms. W. and Ms. M.W. have an extensive history of Child Protective Services (CPS) involvement. Between March and November 2020, eight reports were filed regarding concerns for the safety of their children, with allegations of domestic violence, substance abuse, unaddressed mental health disorders, and criminal activities.

---

[2] H.W.'s siblings, H.B. and A.W., are not involved in this appeal.

2

No. 38044-1-III
*In re Dependency of H.W.*

*Procedure*

On November 30, 2020, the Washington[3] Department of Children, Youth, and Families (Department) filed a dependency petition as to then-six-year-old H.W. After a contested shelter care hearing on December 10, the commissioner ordered H.W. to be temporarily placed with her grandmother.

On December 22, 2020, Mr. B. moved to intervene in the dependency, stating he was H.W.'s biological father and was willing to take placement of her. That day, the Department requested H.W. be moved to foster care because placement with the grandmother was no longer possible. Ms. M.W. opposed intervention, stating she established parentage in April 2019 and was bonded in a parent-child relationship.

On December 30, 2020, the trial court entered an order finding Ms. M.W. established paternity of H.W. by presumption, based on a birth certificate filed with the state registrar of vital statistics.

On January 5, 2021, the court placed H.W. in foster care and granted Mr. B.'s motion to intervene. On January 6, 2021, the court appointed Krystal Ruiz as guardian ad litem (GAL) to represent H.W.

---

[3] The case was transferred from Oregon to Washington because the parents are residents of Spokane and reported no plans to remain in Oregon.

No. 38044-1-III
*In re Dependency of H.W.*

On January 14, 2021, Mr. B. moved for placement of H.W. and to vacate the December 15, 2020 order establishing Ms. M.W.'s paternity. Mr. B. declared H.W. was his biological child, born out of his relationship with Ms. W. He argued Ms. M.W. was only later added to H.W.'s birth certificate without his knowledge and the order finding paternity by presumption deprives him of his paternity interest.

On January 20, 2021, the Department filed a response, opposing placement of H.W. with Mr. B. The Department argued that H.W. had been in foster care since late December, which permitted her to return to her previous school and be near her mother. The Department also argued Mr. B. had not completed the required background checks or paternity test, and changing placement before establishing paternity would not be in H.W.'s best interest.

On January 28, 2021, the GAL submitted a declaration regarding placement of H.W. She stated that H.W. "reports a loving connection with her legal father Ms. [M.W.] and she appears to be positively bonded to her." Clerk's Papers (CP) at 196. Conversely, H.W. "reports a lot of anger towards [Mr. B.]." CP at 196. H.W. believes that Mr. B. took her brother away from her mother and that Mr. B. lies about why he has done so. H.W. reports distrusting Mr. B. Ms. Ruiz noted, "Whatever the source of this dislike and distrust, whether based on truth or not, it is *her* reality and should not be readily

4

dismissed." CP at 198. Ms. Ruiz agreed with the Department that H.W. should not be placed with Mr. B. at that time because H.W. is connected to Ms. W. and Ms. M.W. She recommended, among other things, that there be no discussion of the case and that H.W. should be encouraged to stay safe, follow the rules, and do her best at school until reunification occurs.

*Motion underlying this appeal*

On January 27, 2021, Ms. M.W. filed a motion on shortened time requesting appointment of counsel on behalf of H.W. at public expense. She acknowledged there was no automatic right to an attorney, but argued that under *Mathews*,[4] it was more likely than not that H.W.'s due process rights would be protected by an attorney. She noted that H.W. had several placement options and visitation needs, it was unclear whether there was a conflict between H.W.'s best interests and her legal interests, and appointing an attorney would comport with best practices in dependency proceedings.

The Department, Mr. B., the GAL, and Ms. W. objected to Ms. M.W.'s hearing on shortened time as they had not yet read the motion. The court granted the motion for shortened time and presided over a hearing that day.

---

[4] *See Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (setting forth three factors for courts to consider when determining what due process requirements apply to a particular case).

No. 38044-1-III
*In re Dependency of H.W.*

Ms. M.W. argued:

This motion comes because of the complex—complexity of this case and how many motions have been brought before that directly relate to [H.W.] and her current placement, visitation and how many parties are involved in this, including there being parties that aren't . . . established as parents that are involved in [this] case.
        Asking for an attorney to be appointed for a child falls on the standard of whether it's more likely than not that her due process rights can be protected through legal counsel. . . .  There is no presumption that an attorney should not be appointed.  It's just not standard practice in Spokane County but this is practice in other places in the state and most places nationwide as well.

Report of Proceedings (Jan. 27, 2021) (RP) at 13.  Ms. M.W. argued that the *Mathews* factors supported appointment of counsel.  Ms. W. deferred to the court on the issue.

Mr. B. opposed Ms. M.W.'s motion.  He argued there was a danger that Ms. W. and Ms. M.W. would coach H.W.  He disagreed an attorney was necessary under *Mathews* because they already had a "highly qualified" GAL whose report covers the interests of this child "in significant detail."  RP at 18-19.  He argued the GAL and the Department could sufficiently protect H.W.'s interests and "granting this request would further place this child more at the center of this litigation in a case where these children should be more allowed to be children . . . ."  RP at 19.

6

The Department also opposed the motion out of concern that case information would be inappropriately shared with H.W. at her young age. It also argued there was only speculation that H.W.'s interests were not represented by the GAL.

The GAL took no position on the appointment of counsel but stated that she had clearly communicated H.W.'s statements about Mr. B.'s placement request. The GAL believed she could advocate for H.W.'s best interests while accurately reporting her stated interests. She was also concerned that the complexity of the legal system and changing case dynamics would be difficult for H.W. to understand given her young age.

*Court's oral ruling*

After hearing the parties' arguments, the court ruled:

> I think we're presuming that a six and a half year old is gonna know what's best for them to start with. The research is pretty clear that that's quite difficult at age six and a half . . . . Thankfully, we do have a guardian ad litem . . . .
> So, [H.W.] is number one, having her interests protected by the guardian ad litem. Number two, I am concerned about coaching. There's a distinction between . . . a child knowing what's going on versus statements that I have been reading most recently. . . .
> So, to put then that other added layer of this six year old child having to have legal conversations with an individual, I—I can't imagine that. There's a reason that we carve out the age of 12. . . . [W]e recognize that they can probably engage in that conversation.
> I also have the benefit of being a guardian ad litem . . . . I could not imagine having a conversation with a six year old. I just—I don't think it's appropriate. There's no information at this point directly that [H.W.] has any conflict. There is no information that we don't have individuals that are

7

not taking her best interests at heart. We do have a guardian ad litem. We do have a social worker. We do have attorneys. But at this point, no. I'm not appointing an attorney for [H.W.] at age six and a half. It is case specific. And in this case, I do not think it's appropriate.

RP at 23-25.

On January 29, 2021, the court entered an order denying Ms. M.W.'s motion and incorporating its oral ruling.

Ms. M.W. filed a timely notice of appeal, which this court accepted as a notice of discretionary review.

## ANALYSIS

### FAILURE TO SUFFICIENTLY APPLY *MATHEWS* FACTORS

Ms. M.W. contends the trial court failed to address the *Mathews* factors before denying her motion to appoint counsel on behalf of H.W. and the appropriate remedy is to remand. The Department concedes this issue. For the reasons set forth below, we agree.

After the hearing on Ms. M.W.'s motion to appoint counsel for H.W. at public expense, the legislature amended the statute to provide the right to counsel for all children in dependency proceedings. *See* SECOND SUBSTITUTE H.B. 1219, 67th Leg., Reg. Sess. (Wash. 2021); RCW 13.34.090(3). However, implementation will be phased in by a county over a six-year period. *See* RCW 13.34.212(3)(c). Appointment of counsel is discretionary until the phase-in date. *See* RCW 13.34.212(2)(a) ("The court *may* appoint

an attorney to represent the child's position in any dependency action . . . .") (emphasis added)).  The phase-in schedule has not been published and we presume this matter will be remanded before implementation in Spokane County.  Accordingly, we proceed to address the parties' due process arguments.

Washington courts have long recognized that parents in dependency proceedings have a fundamental liberty interest in their right to parent their children, as well as a right to counsel when the State seeks to terminate parental rights.  *In re Dependency of M.S.R.*, 174 Wn.2d 1, 13, 271 P.3d 234 (2012) (citing *In re Welfare of Myricks*, 85 Wn.2d 252, 253-54, 533 P.2d 841 (1975)); *In re Welfare of Luscier*, 84 Wn.2d 135, 136-39, 524 P.2d 906 (1974)).  Under federal precedent, there is no blanket right to appointed counsel in termination proceedings but due process may demand it in particular cases.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981) (deciding whether to appoint counsel for indigent parents in termination proceedings requires a *Mathews* balancing analysis).

To determine what process is due in a particular circumstance, courts must consider and balance the following factors: (1) the private interest that will be affected, (2) the risk of erroneous deprivation of that interest and the value of the additional safeguards sought, and (3) the government's interests, including the fiscal and

No. 38044-1-III
*In re Dependency of H.W.*

administrative burdens the additional procedural requirement may impose. *Bellevue Sch.*

*Dist. v. E.S.*, 171 Wn.2d 695, 705, 257 P.3d 570 (2011) (citing *Mathews*, 424 U.S. at

335).

The law at the time of the 2021 hearing was clear: trial courts must apply the

*Mathews* factors when determining whether to appoint counsel for children in

dependency proceedings. *In re Dependency of E.H.*, 191 Wn.2d 872, 894, 427 P.3d 587

(2018). In applying *Mathews* in these circumstances, courts are to "tak[e] into account

the specific interests at risk in each instance, the additional decisional accuracy that would

be afforded by appointing an attorney, and the government's interest in not appointing

counsel." *E.H.*, 191 Wn.2d at 894. In addition, courts should consider the following

nonexhaustive factors:

> [T]he age of the child, whether the child is in legal or physical custody of
> the State, whether the child's stated interests are aligned with the GAL's
> assessment of the child's best interest (if a GAL has been appointed) or
> with another represented party's desires, whether the child disputes the facts
> that form a basis for the dependency determination, whether the child
> presents a complex argument against the State's proposed action, and the
> issues that are actually disputed or to be addressed in the hearing.

*Id.*

Here, despite clear precedent requiring a *Mathews* analysis on the record, the trial

court did not address the factors enumerated above. Although the court touched on some

10

relevant considerations, including H.W.'s age and whether her stated interests could be aligned with the GAL's assessment of her best interest, the court's oral ruling is legally insufficient.  The parties agree on this point.

However, the parties do not agree whether under *Mathews* and *E.H.*, due process requires the court appoint to counsel at public expense for H.W.  We decline to decide that issue.  "The function of the appellate courts is to review the action of the trial courts." *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We do not hear evidence or find facts.  *Id.*  It is well settled that trial courts are in the best position to consider family law issues.  *See In re Marriage of Maughan*, 113 Wn. App. 301, 305, 53 P.3d 535 (2002).

The trial court heard Ms. M.W.'s motion on shortened time without the benefit of briefing from all interested parties.  Furthermore, its brief oral ruling reflects a sparse record; the court would benefit from additional information before ruling on such a fact-intensive matter.  On remand, the court may preside over an evidentiary hearing where it can consider more facts than those currently in our record.  *See In re Dependency of T.R.*, 108 Wn. App. 149, 160, 29 P.3d 1275 (2001).  Then, before ruling on the issue, the court must engage in a *Mathews* balancing analysis on the record and should consider the additional factors outlined in *E.H.*

11

No. 38044-1-III
*In re Dependency of H.W.*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

I CONCUR:

_____
Staab, J.

12

No. 38044-1-III

FEARING. J. (Concurring in part and dissenting in part) — I refer to the minor, H.W., as Helen in order to humanize her. Helen is currently seven years old and will turn eight in late July 2022.

I concur in the majority's remand to the superior court of the request for appointment of counsel for Helen. I would, however, go further than the majority and direct the superior court to actually appoint counsel. In my view, the superior court, based on the dependency's unique circumstances, would abuse its discretion by not appointing counsel.

Based in part on the considerations expressed by Justice Yu in her dissent, in *In re Dependency of E.H.*, 191 Wn.2d 872, 427 P.3d 587 (2018), I would prefer to rule that all children deserve and possess a right to counsel in a dependency action, no matter the age of the child or the circumstances surrounding the dependency. At the least a presumption should exist in favor of appointment. All children in dependency cases are continuously at risk of being erroneously deprived of their most fundamental rights. *In re Dependency of E.H.*, 191 Wn.2d 872, 902 (2018) (Yu, J. dissenting). An attorney representing the

child's position dramatically decreases that risk. *In re Dependency of E.H.*, 191 Wn.2d at 902 (Yu, J. dissenting). Washington's current discretionary approach to appointing counsel for children in dependency cases fails to protect children's state due process rights. *In re Dependency of E.H.*, 191 Wn.2d at 902 (Yu, J. dissenting).

Contrary to my preference, I may not adopt the dissenting opinion in *Dependency of E.H.* as the rule to apply in this appeal. Instead, I am bound by the lead decision in *In re Dependency of E.H.*, which opinion functions as the majority opinion with regard to appointment of counsel. Nevertheless, even the principles and test adopted in the lead opinion demand appointment of counsel for Helen.

As noted by the majority, the legislature has adopted the view of the dissent in *Dependency of E.H.* and enacted a law that requires appointment of counsel for all children. SECOND SUBSTITUTE H.B. 1219, 67th Leg., Reg. Sess. (Wash. 2021); RCW 13.34.090(3). Unfortunately the legislature directed that the statutory right be implemented over a six-year window. RCW 13.34.212(3)(c). In the meantime, we remain under the old regime as expressed by the lead opinion in *Dependency of E.H.*

Dependency proceedings are not uniform, although each creates a tension between the State's ability to protect children and the fundamental familial rights of those party to the proceedings. *In re Dependency of E.H.*, 191 Wn.2d 872, 878 (2018). Circumstances will vary from dependency to dependency. Thus, according to the Washington Supreme Court, the amount of process due to children in dependency proceedings will vary with each case. *In re Dependency of E.H.*, 191 Wn.2d 872, 878 (2018).

2

A child, a parent, a guardian, a caregiver, or Department of Children, Youth, and Families may petition the court to appoint counsel at public expense to represent a child in a dependency proceeding. *In re Dependency of E.H.*, 191 Wn.2d at 883. The court may also appoint an attorney on its own initiative. *In re Dependency of E.H.*, 191 Wn.2d at 883.

The superior court possesses discretion when determining whether to appoint counsel for children. *In re Dependency of* M.S.R., 174 Wn.2d 1, 22, 271 P.3d 234 (2012). When exercising discretion, the court must apply, on a case by case basis, the procedural due process *Mathews* test promulgated by the United States Supreme Court. *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *In re Dependency of E.H.*, 191 Wn.2d 872, 885 (2018); *In re Dependency of* M.S.R., 174 Wn.2d 1, 21 (2012).

Under the *Mathews* factors, the court must compare the status quo to the procedures sought and identify (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *In re Dependency of E.H.*, 191 Wn.2d at 891. The United States Supreme Court has directed state courts to include some factors when balancing the *Mathews* factors in the context of appointment of

3

counsel to a party to litigation in order to satisfy due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *In re Dependency of E.H.*, 191 Wn.2d at 889. Those factors include whether the parties dispute underlying facts, the complexity of the law, the extent and nature of the liberty interest at stake, and the ability of the person requesting counsel of speaking effectively for himself or herself. *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973). The Washington Supreme Court has added, for consideration for appointment of counsel to a minor in a dependency action, the factors of whether the child's age permits him or her to express preferences and whether the child's interests align with other parties. *In re Dependency of E.H.*, 191 Wn.2d at 890.

*Mathews* factor one identifies the private interest impacted by government action. A minor holds a vital liberty interest in the outcome of a dependency action. The child possesses a constitutional right to the care, custody, and companionship from the parent and the right to companionship of siblings. *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 97 S. Ct. 2094, 53 L. Ed.2 d 14 (1977); *In re Custody of Shields*, 157 Wn.2d 126, 152, 136 P.3d 117 (2006) (Bridge, J., concurring). A child holds a statutory right to visitation with siblings. RCW 13.34.020. During the dependency proceeding, the child risks losing relationships with her family. *In re Dependency of E.H.*, 191 Wn.2d at 901 (Yu, J. dissenting). In a dependency or termination proceeding, the child may not only lose a parent but also relationships with siblings, grandparents, aunts, uncles, and other extended family. *In re Dependency of*

*E.H.*, 191 Wn.2d at 910 (Yu, J. dissenting). The child typically has formed attachments to parents and siblings. *In re Dependency of E.H.*, 191 Wn.2d at 910 (Yu, J. dissenting).

A child possesses an interest in placement in one stable home. A parent is not removed from his or her home in a dependency action, but the child may be moved from relative home to relative home and from foster home to foster home during the course of the proceedings. Regardless of whether the court places the child with relatives or in the care of the State, removal profoundly impacts every aspect of the child's life. *In re Dependency of E.H.*, 191 Wn.2d at 911 (Yu, J. dissenting). A child removed from her parents' care face changes in homes, schools, and care facilities, and this movement may cause a child significant harm. *In re Dependency of Lee*, 200 Wn. App. 414, 450, 404 P.3d 575 (2017).

*Mathews* factor two ascertains the risk of deprivation of rights without the requested process. The standard response to a request for appointment of counsel for a minor in a dependency case is to highlight that a guardian ad litem already serves the child. Nevertheless, a guardian ad litem represents the child's best interests. RCW 13.34.105(1)(f). Nevertheless, whereas the guardian ad litem should identify the legal interests of the child, he or she does not represent the legal interests of the child. Also, the guardian ad litem sometimes performs merely as instrument of the State.

An appointed guardian ad litem or special advocate for a child does not play the same role as an attorney representing the child's position and does not mitigate the risk of erroneous deprivation as an attorney does. *In re Dependency of E.H.*, 191 Wn.2d 872,

912-13 (2018) (Yu, J. dissenting). A guardian ad litem lacks training to protect legal rights. *In re Dependency of* M.S.R., 174 Wn.2d 1, 21 (2012). The guardian ad litem does not advocate for the wishes of the child.

A child with a guardian ad litem but no attorney is more likely to be erroneously deprived of her rights. *In re Dependency of E.H.*, 191 Wn.2d at 914 (Yu, J. dissenting). Data establishes that children unrepresented by attorneys are routinely erroneously deprived of their most fundamental protected interests and statutory rights, even when they have an appointed guardian ad litem or other non-attorney advocate. *In re Dependency of E.H.*, 191 Wn.2d at 913 (Yu, J. dissenting).

A child enjoys, when possible, the right of placement with people she knows instead of being shuttled into the foster care system. RCW 13.34.130(5). Protection of that right depends on whether the child has an attorney. *In re Dependency of E.H.*, 191 Wn.2d at 913 (Yu, J. dissenting). Youth appointed an attorney at the first dependency hearing are twenty percent more likely to reside with known persons instead of foster parents than those children appointed attorneys sometime after the initial shelter care hearing and twenty-seven percent more than those children without an attorney until after termination of parental rights. *In re Dependency of E.H.*, 191 Wn.2d at 913 (Yu, J. dissenting).

Children lack knowledge and insight into legal rights. They do not know when to speak and lack the ability to speak effectively to the court. ALICIA LEVEZU, CHILDREN & YOUTH ADVOCACY CLINIC AT UNIVERSITY OF WASHINGTON, DEFENDING OUR

CHILDREN: A CHILD'S ACCESS TO JUSTICE IN WASHINGTON STATE 5 (Aug. 2016)

(*Defending Our Children*), https://perma.cc/5KUG-Z8L6. A child residing in an abusive

placement will be unable to advocate her interests.

Helen's dependency presents unique legal questions. The mother's girlfriend has

assumed the position of father and been declared the legal father. Helen has formed a

bond with this legal father. But Helen's biological father may possess legal rights to the

care, custody, and companionship of Helen. Helen may have a constitutional right to the

companionship of her biological father. The father seeks placement of Helen with her.

Both the declared father and the biological father skirmish with one another, and Helen

sits caught in the middle.

The biological father currently enjoys placement with Helen's brother. The father

resides in Kitsap County. Helen expresses closeness with the brother. Court decisions

impact her ability to continue to visit and bond with her brother. The distance in

geography impacts the availability of visitation.

The superior court initially placed Helen with her biological father's mother, who

resides in Tacoma. The grandmother relinquished placement because of harassment from

Helen's mother. Helen has since been placed in three foster homes. She now resides

with her maternal grandmother, who previously faced criminal charges for interfering in

a child's placement. An attorney could play a critical role in facilitating Helen's

placement in a stable home.

The State, the guardian ad litem, and the court have expressed concern about the mother and legal father coaching Helen on what to say. The State has documented the mother coaching Helen's brother to slander the biological father. Yet, the guardian ad litem takes Helen for her word when Helen expresses dislike for her biological father in part because the father took her brother from her. We do not know if the mother and the declared father coached Helen to denigrate the biological father. An attorney would be in a better position to investigate the relationship between Helen and her biological father and advocate for Helen's right to contact with the father.

In its ruling, the superior court declared that no attorney or guardian needed to speak with the child. I disagree. An attorney could assist in listening to Helen's needs and desires. Conversations between Helen and her attorney would be confidential unlike discussions between Helen and her guardian ad litem. After listening to Helen, an attorney could investigate Helen's circumstances with the end of advocating her legal interests and wishes as opposed to her best interests.

The State has forwarded, on appeal, no reason to deny appointment of counsel for Helen, let alone a good reason. The record shows no evidence of the guardian ad litem advocating Helen's legal interests. Under the third *Mathews* factor, the State will bear only minimal burden in paying for Helen's counsel. Data shows that the dependency process proceeds quicker when the child is represented by counsel such that the State may save expenses. In addition to dependent children achieving permanency quicker, children represented by attorneys are forty-five percent more likely to be reunified with

8

biological parents, enjoy a thirty percent reduction in placement moves, and suffer sixty-five percent fewer school moves. Washington State Center for Court Research, (2021) *Evaluation of the Washington State Dependent Child Legal Representation Program*, Olympia, WA: Administrative Office of the Courts.

Under current law, the superior court possesses discretion when deciding whether to appoint counsel for a minor. A superior court abuses its discretion by making a decision that is manifestly unreasonable or by basing its decision on untenable grounds or untenable reasons. *VanderStoep v. Guthrie*, 200 Wn. App. 507, 518, 402 P.3d 883 (2017). All *Mathews* factors demand appointment of counsel for Helen. The superior court abused its discretion when denying appointment. I would remand for the superior court to appoint Helen an attorney.

I concur in part and dissent in part.

_____
Fearing, J.

9